Joseph Liff, J.
The motion to dismiss the complaint in the fourth-party action is granted.
Donald Redding and Gulf Oil Corporation are the lessee and lessor respectively of a gasoline service station location. The lease is on a printed form employed by the lessor in many similar transactions. At the top of the first page in bold-faced type appear the lessor’s name and trade insignia (sometimes referred to as a “ logo ”). The insertions are few and typewritten. They include date of execution, names and addresses of the parties, description of the premises, term of the lease and an equipment schedule. Redding sues his lessor in negligence to recover damages for injuries alleged to have been suffered by reason of a defective piece of equipment. Gulf in a third-party action and Redding in a separate action, seek to recover against Western Manufacturing Company, maker of the hydraulic lift which it is claimed was at fault. Issue in the action of Redding v. Gulf was joined in February, 1968. After these actions had been joined for trial last April, Gulf brought a fourth-party action against Redding alleging that if it were held to respond in damages to him then he would be obliged to indemnify it by virtue of the following provision in the lease: “ Lessee agrees to exonerate, save harmless, protect and indemnify Lessor from any and all losses, damages, claims, suits or actions, judgments and costs which may arise or grow out of any injury to or death of any person or persons or damage to any property caused by or in any manner connected with the use, possession, repair or condition of said premises or any equipment or fixtures thereon.”
Redding’s basis for this motion is his claim that the indemnification clause is void because it violates section 5-321 of the General Obligations Law. However, on its face, the clause is *466 not one which comes within the prohibition of the statute for it does not exempt the lessor from liability, but preserving the lessor’s exposure, provides for indemnity from the lessee.
Gulf, in opposing, .relies on Levine v. Shell Oil Co. (28 N Y 2d 205) where an indemnification clause in an agreement between a landlord and tenant-operator was enforced. There are similarities between this and the Levine case in that leases of gasoline service stations and indemnification clauses are present in both, but there the resemblance ceases. In Levine, the injured party was the lessee’s employee and the qustion was whether the indemnification clause was sufficiently broad to require the lessee to indemnify the lessor against the latter’s active negligence. In answering, the Court of Appeals abandoned rigid adherence to the rule in Thompson-Starrett Co. v. Otis Elevator Co. (271 N. Y. 36) that such an agreement had to be expressed in unequivocal terms and held that the intention to indemnify a party against his active negligence could be gathered from all the language of an agreement although the words “ active negligence ’ ’ did not appear and that the words ‘ ‘ any and all ’ ’ were sufficient to cover the owner’s active neglig’ence.
If that were all it might be left to the trier of the facts to determine whether “ the agreement involved herein is either a contract of adhesion or an unconscionable agreement ” (Levine v. Shell Oil Co., supra, p. 213).[1] However, we have concluded that the obligation which Redding undertook should not be extended to include an injury to him.
In Levine the court said (p. 211) that “ one who is actively negligent has no right to indemnification unless he can point to a contractual provision granting him that right ’ ’ and ‘ ‘ courts have carefully scrutinized these agreements for an expression of an intent to indemnify and for some indication of the scope of that indemnification. ’ ’ The court continued: ‘ ‘ This rule appears to be premised upon the view that where a person is under no legal duty to indemnify, his contract assuming that obligation must be strictly construed (Kurek v. Park Chester Housing Auth., 18 N Y 2d 450, 456). ’ ’
Applying these principles we seek in vain for language in the clause which indicates an intention to include injury to the lessee.
In Levine the court stated (p. 213) that the lessee was not obliged to accept the contract offered; -that he could have bargained for other terms or refused the contract; and the court *467 determined that since the lessee had not shown that the lessor was guilty of fraud or overreaching conduct, he would be held to the terms of the deal he made. This might be said with even greater force of the lessor here, Gulf, in whose power it lay to give or refuse the opportunity. It had firm control of the events, as witness its refusal to give more than successive terms of one year (affidavit of Donald Bedding, July 26, 1971, p. 2). It prepared the expression of the parties’ agreement. If it desired indemnity against injury to the lessee, some expression of that intention should have been inserted. As the clause is written it refers to the parties as lessor and lessee and it must be held that the indemnity was against liability to person or persons other than themselves.
While the decision in Levine modified the earlier rule in Thompson-Starrett it did not alter the requirement that such agreements must be strictly construed. ‘ ‘ The reason of the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it, is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them.” (Gillet v. Bank of Amer., 160 N. Y. 549, 555.) (Also to the same effect, see Atwater & Co. v. Panama R. R. Co., 246 N. Y. 519; United Water Works Co. v. Omaha Water Co., 164 N. Y. 41.)
We hold, therefore, that this clause may not he read to excuse Gulf from active negligence causing injury to its lessee in the absence of language showing such an intention. Mindful of the caution given to us in Levine and in Kurek (p. 456) that these clauses should not be construed as to make them meaningless we are not saying that the intent must appear in unequivocal language or “ express terms ” (cf. Ciofalo v. Vic Tanney Gyms, 10 N Y 2d 294, 297) but we find the requisite “unmistakable intent ” absent from the agreement here (Levine v. Shell Oil Co., supra, p. 212).
No more is submitted in support of Gulf’s position than an affidavit of an attorney who points to the clause and submits a memorandum of law devoted to a discussion of the opinion in Levine. There has not been offered an affidavit of. an officer, agent, employee, etc. of the company with knowledge of the facts which would demonstrate the intention to indemnify against injury to the lessee.
Thus we do not reach the question whether the clause, if it were held to apply to the lessee (as urged by Gulf) would he in violation of General Obligations Law (§ 5-321). Some *468 comments may be in order. Where an exculpatory clause is asserted, not only is it closely scrutinized to see whether the provisions are adequately expressed but the relationship between the contracting parties and the interest of the public in the agreement will be considered (cf. Ciofalo v. Vic Tanney Gyms, supra, p. 296). The decision in Kirshenbaum v. General Outdoor Adv. Co. (258 N. Y. 489) is no longer viable for since then the public policy of the State condemning agreements which would exempt landlords from liability for injury to others has been expressed in section 5-321 of the General Obligations Law and its predecessor, section 234 of the Real Property Law (L. 1937, ch. 907). We suggest, therefore, that it may be that if the clause in express terms included an injury to lessee it would come within the prohibition of the statute. Otherwise it would provide a simple device for an owner to avoid the statute entirely by obtaining an all inclusive indemnification clause.

. “ Contract of adhesion signifies a standardized contract, which, imposed and drafted by the .party of superior bargaining strength, relegates to the subscribing party, only the opportunity to adhere to the contract or reject it.” (17 C. J. S. Contracts, § 10, p. 581).