**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                              Elisabeth A. Shumaker
Clerk                                                                                                    Chief Deputy Clerk

October 7, 1999

**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 98-5053, *Huffman v. Saul Holdings Limited Partnership*
Amended Opinion filed on October 5, 1999

The slip opinion contains a clerical error on page 8, first sentence of the last paragraph, the sentence that reads:

Plaintiffs assert that Saul's notice of removal was untimely, whether the thirty-day time period is measured from service of the initial pleading, under the first paragraph of § 1446(b), or from Saul's deposition testimony, under the second paragraph.

The reference to "Saul's deposition testimony" should have been to "Mr. Huffman's deposition testimony."  The sentence is corrected to read as follows:

Plaintiffs assert that Saul's notice of removal was untimely, whether the thirty-day time period is measured from service of the initial pleading, under the first paragraph of § 1446(b), or from Mr. Huffman's deposition testimony, under the second paragraph.

Please make the correction to your copy of the opinion.

Sincerely,
Patrick Fisher, Clerk of Court

By:   Keith Nelson
Deputy Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MARSHALL HUFFMAN; VIRGINIA
NEWTON,

      Plaintiffs-Appellants,

v.

SAUL HOLDINGS LIMITED
PARTNERSHIP, a Maryland limited
partnership,

      Defendant-Appellee.

No. 98-5053

---

## ORDER ON PETITION FOR REHEARING
Filed October 5, 1999

---

Before **BRORBY** , **EBEL** , and **BRISCOE** , Circuit Judges.

This matter is before the court on defendant-appellee's petition for

rehearing. The petition is granted. The mandate issued in this matter on July 8,

1999, is recalled and the court's original opinion is withdrawn. The new amended

opinion is attached. The mandate shall reissue forthwith.

                       Entered for the Court
                       Patrick Fisher, Clerk of Court

                       By:   Keith Nelson
                            Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 5 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MARSHALL HUFFMAN; VIRGINIA
NEWTON,

        Plaintiffs-Appellants,

v.

SAUL HOLDINGS LIMITED
PARTNERSHIP, a Maryland limited
partnership,

        Defendant-Appellee.

No. 98-5053

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-602-H)**

---

Submitted on the briefs:

Bill V. Wilkinson and Lawrence W. Zeringue of Wilkinson Law Firm, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Jeffrey H. Contreras of Jeffrey H. Contreras, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **BRORBY** , **EBEL** , and **BRISCOE** , Circuit Judges.

---

**BRORBY** , Circuit Judge.

Plaintiffs-appellants Marshall Huffman and Virginia Newton brought suit in Oklahoma state court against Saul Holdings Limited Partnership (Saul). Saul filed counterclaims, removed the action to federal district court, and obtained entry of summary judgment in its favor. Plaintiffs appealed the district court's denial of their motion to remand and also the final judgment. We hold that the notice of removal was untimely under 28 U.S.C. § 1446(b), but that this defect, standing alone, would not be sufficient to warrant vacating the judgment and remanding to state court. We determine, however, that the district court's entry of summary judgment was improper. Accordingly, we remand to the district court with instructions to vacate the judgment and remand the action to state court. [1]

## I. BACKGROUND [2]

Plaintiffs leased space from Saul to operate a retail furniture store in a shopping center in Tulsa, Oklahoma. At the time plaintiffs viewed the property, Saul's real estate agent explained that Saul was aware that the roof leaked, and that it would make necessary repairs after the space was leased. Plaintiffs

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] In presenting the setting of this case, we view the facts in the light most favorable to the non-moving party. See, e.g., Cole v. Ruidoso, 43 F.3d 1373, 1377 (10th Cir. 1994).

-2-

executed Saul's form lease, with minor typed and hand-written alterations, on November 5, 1995.

Shortly afterwards, Saul attempted to repair the roof. The leaks, however, persisted. Throughout the winter and early spring, plaintiffs complained about leaks to Saul's property manager, who stated that the problem would be remedied. Apparently all complaints were made in person or over the telephone, but not in writing. Despite the leaking roof, plaintiffs executed another lease for additional space on February 22, 1996. Saul again attempted repairs in the spring of 1996.

Contending that none of the repair efforts solved the problem, plaintiffs moved to another location in June 1996. Plaintiffs then brought suit in state court against Saul, stating causes of action for breach of contract and rescission.[3] Saul answered and counterclaimed for payment of rent and other charges from May 1996 through the end of the leases in February 2001.

In their complaint, filed July 2, 1996, plaintiffs requested actual and punitive damages "in excess of $10,000." Appellants' App. at 4. Later in the litigation, plaintiffs gave more definition to their damage claim, stating that they

---

[3] Plaintiffs also made claims for rescission and fraud based on Saul's representations concerning the procurement of an anchor tenant for the shopping center. Because they do not pursue these claims on appeal, we do not discuss them here.

sought damages for lost business and harm to their business reputation, not for damaged personal property. They claimed that:

> [t]he constant problem with the roof leaking made it almost impossible to carry on a business. The store floor was almost always wet. Practically all of the furniture and furnishings in the store remained wet. It was impossible to avoid or prevent the moldy, damp, smelly atmosphere of the store because of the roof leaking problems. Much of the furniture was displayed with carpets or rugs and, of course, these were always soaking wet. On numerous occasions the floor was slippery and was dangerous for employees and customers.
>
> Customers frequently complained about the musty and damp smell, as well as about water being present in the store. Of course we would try to explain, but I do not believe the explanations were believed. The look, feel and smell of the store was that of a cheap low-rate joint, rather than that of a respectable furniture store. Customers complained and often left quickly without taking time to browse or really shop the furniture items because of these intolerable conditions.

Id. at 177-78.

At his deposition, taken April 28, 1997 , Marshall Huffman testified that plaintiffs were seeking money damages in "excess of $300,000" for "ruining" their business and harming his reputation. Id. at 56. Counsel for Saul did not ask any general questions of Mr. Huffman concerning the elements of the requested damages. Follow-up questioning focused on "documentation" in support of the damage claim. Mr. Huffman stated that he had one supporting document, apparently a set of balance sheets and income statements, see id. at 48, 56, but that he did not yet have "economic research" documents, id. at 58. Later in the

deposition, counsel for Saul paraphrased Mr. Huffman's testimony as "say[ing] he's seeking $300,000 for losing his business." Id. at 40.

Mr. Huffman also identified an economist, Dr. John Bonham, who would testify as an expert witness on damages. See id. at 58. Dr. Bonham's expert report, produced at his June 3, 1997 deposition, calculated damages at $1,900,000. See id. at 72.

On June 25, 1997, Saul filed a notice of removal, contending that the expert report provided the first notice that the case satisfied diversity jurisdiction requirements. Plaintiffs moved to remand the action to state court on the ground that Saul's notice of removal was untimely under 28 U.S.C. § 1446, in that it was filed more than thirty days after service of the summons and more than thirty days after Mr. Huffman's deposition. The district court determined that neither the initial pleading nor Huffman's deposition testimony provided Saul with proper notice that the jurisdictional amount was in controversy. According to the district court, "[s]uch notice was not given until Defendant received Plaintiff's damage analysis and economic figures on June 3, 1997." Appellants' App. at 74.

Subsequently, the district court granted Saul's motion for summary judgment, entering judgment against plaintiffs on their claims and in favor of Saul on its counterclaims. This appeal followed. On appeal, plaintiffs argue that: (1) the removal was untimely; (2) plaintiffs were justified in rescinding the leases

for failure to repair the roof; (3) the lease terms did not bar the claim for lost profits; (4) to the extent the leases could be interpreted as exculpating Saul, plaintiffs presented sufficient evidence for a reasonable trier of fact to determine that the leases were void for lack of equal bargaining power; and (5) the court should not have enforced the rents clause of the lease.

## II. DISCUSSION

### A.    Removal Procedure

"When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court. . . ." Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996) (citing 28 U.S.C. § 1441(a)). A plaintiff objecting to the removal may file a motion asking the district court to remand the case to state court. See id. at 69.

"This court has jurisdiction over a denial of a motion to remand to state court when coupled with the appeal of a final judgment." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 n.1 (5th Cir. 1994); see also Caterpillar, 519 U.S. at 74 (stating that a timely motion for remand is all that is required to preserve appellate review of an objection to removal). "Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal de novo." Leffall, 28 F.3d at 524.

At the outset, we note that there are two types of improperly removed cases: those in which the federal court has no subject matter jurisdiction and those with defects in the removal procedure itself. See Chad Mills, Caterpillar Inc. v. Lewis: Harmless Error Applied to Removal Jurisdiction, 35 Hous. L. Rev. 601, 610-11 (1998). A defect in subject matter jurisdiction can never be waived and may be raised at any time. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1128 (10th Cir. 1999). A procedural defect, however, does not involve the subject matter jurisdiction of the court and may be waived. See Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1543-44 (5th Cir. 1991).

The parties agree, and the record confirms, that the requirements for diversity jurisdiction exist in this case: "the matter in controversy exceeds the sum or value of $75,000," and the parties are "citizens of different States." 28 U.S.C. § 1332(a). This appeal, however, raises two basic issues relating to removal procedure: (1) whether Saul's notice of removal was untimely pursuant to 28 U.S.C. § 1446(b) and, if so, (2) whether a failure to comply with the statutory deadline requires a remand to the state court. We address each issue in turn.

### 1. Timeliness

Section 1446(b) provides, in relevant part:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

See also Murphy Bros. v. Michetti Pipe Stringing, Inc., 119 S. Ct. 1322, 1325-26 (1999). "The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand." Snapper, Inc. v. Redan, 171 F.3d 1249, 1253 (11th Cir. 1999).

Plaintiffs assert that Saul's notice of removal was untimely, whether the thirty-day time period is measured from service of the initial pleading, under the first paragraph of § 1446(b), or from Mr. Huffman's deposition testimony, under the second paragraph. On the first alternative, plaintiffs argue that a reasonably qualified attorney could have ascertained from their initial pleading that potential damages exceeded the statutory amount, and therefore the removal period expired thirty days after service of the summons. See Appellants' Opening Br. at 10. We disagree with that proposition.

The initial pleading stated a claim for actual and punitive damages "in excess of $10,000," Appellants' App. at 4, based on an alleged breach of obligations arising out of a landlord-tenant relationship. Saul could only guess as to whether the claim exceeded $75,000. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995) (determining that a complaint filed in Oklahoma state court requesting damages "in excess of $10,000" for each of two employment claims was insufficient to establish the requisite jurisdictional amount); Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 254-55 (5th Cir. 1961) (stating that "nebulous mathematical phraseology" in the prayer of a personal injury action too indefinite to support diversity jurisdiction). Under the circumstances of this case, the thirty-day clock did not begin to run upon receipt of the initial pleading.

Because the initial pleading did not permit Saul to discern the amount in controversy, we must determine at what point Saul received "a copy of an amended pleading, motion, order or other paper from which it [could] first be ascertained that the case [was] one which [had] become removable." 28 U.S.C. § 1446(b). The parties propose different dates for this occurrence. Plaintiffs contend that Mr. Huffman's deposition testimony triggered the running of the thirty-day removal period, and therefore the notice of removal was twenty-eight

days late. Saul asserts that receipt of the expert report marked the beginning of the period, and therefore the notice of removal was timely.

Under § 1446(b), the removal period does not begin until the defendant is able "to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts." DeBry v. Transamerica Corp., 601 F.2d 480, 489 (10th Cir. 1979). "If the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design." Id. Moreover, the circumstances permitting removal must normally come about as a result of a voluntary act on the part of the plaintiff. See id. at 486-88.

To analyze the suitability of plaintiffs' proposed date, we must first determine whether a deposition constitutes an "other paper" within the meaning of § 1446(b). A majority of the federal district courts have not required receipt of an actual written document. Instead, they have held that a discovery deposition does satisfy the requirement. See, e.g., Effinger v. Philip Morris, Inc., 984 F. Supp. 1043, 1047-48 (W.D. Ky. 1997) (collecting cases); Haber v. Chrsyler Corp., 958 F. Supp. 321, 326 (E.D. Mich. 1997); Riggs v. Continental Baking Co., 678 F. Supp. 236, 238 (N.D. Cal. 1988); Smith v. International Harvester, 621 F. Supp. 1005, 1008 (D. Nev. 1985); see also 28 U.S.C.A. § 1446 (Commentary on 1988 Revision) ("The ['other paper'] that reveals the phoniness

-10-

of the nondiverse defendant's joinder may be, e.g., the deposition of some nonparty witness."); 14C Charles Alan Wright et al., Federal Practice and Procedure § 3732 at 300-10 (3d ed. 1998) ("The federal courts have given the reference to 'other paper' an embracive construction . . . . Various discovery documents such as depositions . . . usually are accepted as 'other paper' sources that initiate a new thirty-day period of removability.") (footnotes omitted). See also S.W.S. Erectors, Inc. v. Infax, Inc. , 72 F.3d 489, 494 (5th Cir. 1996) (holding that a deposition transcript is an "other paper").

For several reasons, we adopt the majority rule. The intent of the statute is to "mak[e] sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." Wright, et. al, supra at 306. Unquestionably, information elicited during a deposition may serve that purpose. For purposes of the removal statute, deposition testimony stands on equal footing with written forms of discovery, such as interrogatories and requests for information.

> A defendant cannot forgo one recognized means of obtaining information related to jurisdiction for another and then argue that the manner in which the information was provided, which was in compliance with defendant's request, precludes imputing knowledge of the information to the defendant. Such manipulation would provide a windfall for the defendant which is clearly contravened by the removal statute's emphasis on effecting removal as soon as possible.

-11-

Golden Apple Management Co. v. GEAC Computers, Inc., 990 F. Supp. 1364, 1368 (M.D. Ala. 1998) (citation omitted). We hold that deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an "other paper" under § 1446(b).

Because the applicable rule of civil procedure does not provide a deadline for obtaining a transcript of a deposition, see Fed. R. Civ. P. 30(b)(2), (f)(2), the date of receipt of a transcript may also be subject to manipulation. Accordingly, the removal period commences with the giving of the testimony, not the receipt of the transcript.

In the instant case, therefore, the notice of removal was untimely if Mr. Huffman's deposition testimony provided sufficient notice that the amount in controversy exceeded the jurisdictional minimum. Generally, "the amount sued for fixe[s] the amount in controversy" for jurisdictional purposes. Wabash Ry. v. Vanlandingham, 53 F.2d 51, 51 (8th Cir. 1931). In a removal case, it is the obligation of the removing defendant to establish that the amount in controversy requirement has been satisfied. See Laughlin, 50 F.3d at 873. As a practical matter, however, the burden is "rather light" if the sum claimed by the plaintiff exceeds the jurisdictional amount. 14B Wright et al., Federal Practice and Procedure, § 3702 at 44. Where a plaintiff has not instituted suit in federal court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount

in order to confer jurisdiction on a federal court or that the parties have colluded to that end." St. Paul Mercury Indem. Co. v. Red Cab Co. , 303 U.S. 283, 290 (1938). [4]

At the conclusion of Mr. Huffman's deposition, Saul had the benefit of a petition setting out the factual premise of plaintiffs' lawsuit; financial documents produced in discovery; and, most importantly, the voluntary and unequivocal testimony of Mr. Huffman that plaintiffs were seeking $300,000 in damages. This combination of materials was sufficient to put Saul on notice that the amount in controversy exceeded the jurisdictional minimum. Indeed, Saul had accumulated much more information than is available to a defendant who receives an initial pleading specifying an amount of damages. That defendant is obligated, under the first paragraph of § 1446(b), to remove a case within thirty days.

Mr. Huffman's deposition testimony triggered the thirty-day period of removability. Dr. Bonham's report increased the amount of requested damages and provided calculations supporting plaintiffs' damages case. It did not affect Saul's awareness that the amount in controversy exceeded $75,000. Consequently,

---

[4] We note, however, that the parties cannot "concede" jurisdiction by agreeing that the jurisdictional amount requirement has been satisfied. The court's obligation to determine the presence of the appropriate amount in controversy is independent of the parties' stipulations. See Laughlin , 50 F.3d at 873. "[I]f, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow." St. Paul Mercury Indem. , 303 U.S. at 292.

the notice of removal filed on July 25, 1997, was untimely and plaintiffs' timely objection should have defeated removal.

## 2. Remand upon Appellate Review

The Supreme Court has held, however, that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." Caterpillar, 519 U.S. at 64. In Caterpillar, a "statutory error (failure to comply with the § 1441(a) requirement that the case be fit for federal adjudication when the removal petition is filed)" had been "cured by the time judgment was entered." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 42-43 (1998) (explaining the Caterpillar holding). The Court determined that the "hardly meritless" arguments in favor of a remand "r[a]n up against an overriding consideration. Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming." Caterpillar, 519 U.S. at 75.

The implications of Caterpillar reach beyond "the limited type of fact pattern that the case presented." Mills, 25 Hous. L. Rev. at 614. Other circuit courts of appeal have extended the Caterpillar rationale and applied it to different types of removal defects and other procedural postures. For instance, in Aqualon

-14-

Co. v. Mac Equip. Inc., 149 F.3d 262, 264-65 (4th Cir. 1998), the plaintiff contended that defendant had waived its right to removal by demonstrating an intent to remain in state court. The Fourth Circuit determined that, under Caterpillar, this type of procedural error was not fatal to adjudication in the district court. Similarly, in Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir.), cert. denied, 119 S. Ct. 510 (1998), there was untimely compliance with the requirement of § 1446(a) that all defendants join in a removal notice. Because defendants cured this initial failure before entry of judgment, the Ninth Circuit viewed a "remand on procedural grounds" as "an empty formality." Id. In Parrino, the district court had entered judgment upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), see id. at 702; in Aqualon, the district court had entered summary judgment, see id., 149 F.3d at 264.

We agree with the conclusions reached by these courts. Accordingly, we hold that, under the Court's reasoning in Caterpillar, a defect in removal procedure does not warrant a remand to state court if subject matter jurisdiction existed at the time the district court entered judgment. The same considerations apply whether judgment is based on the outcome of a trial or a district court's ruling on a dispositive motion.

In this case, however, that is not the end of the Caterpillar analysis. "The rationale of efficiency, economy and the interest in finality . . . does not apply

-15-

where the judgment reached by the trial court must be reversed on the merits and the case remanded to the trial court for further proceedings." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). In other words, "where the court of appeals reverses a district court's grant of summary judgment, leaving no judgment on the merits," there is no reason to refrain from ordering a remand to state court. Id. at 1266. We must therefore turn to the merits of the case to determine whether the premise of Caterpillar rules out a remand to state court.

## B.    Entry of summary judgment

This court reviews a grant of summary judgment de novo,

> applying the same legal standard as the district court. We examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied. In applying this standard, we view the factual record and inferences therefrom in the light most favorable to the nonmoving party. However, to survive summary judgment, the nonmoving party may not rest upon the allegations or denials of his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Summary judgment is appropriate if the evidence is such that no reasonable jury could return a verdict for the nonmoving party.

Bullington v. United Air Lines, Inc., No. 98-1125, 1999 WL 606880, at *5 (10th Cir. Aug. 12, 1999) (quotation and citations omitted).

## 1.    Plaintiffs' claim for rescission

-16-

The district court entered summary judgment on plaintiffs' claim for the equitable remedy of rescission. Its order, however, did not address the argument that Saul's failure to provide a sound roof destroyed the object of the lease agreements, thereby warranting rescission.

Under Oklahoma law,

> a party to a contract may rescind the same if through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part . . . . [P]artial failure of performance is ground for the rescission of a contract, when such failure defeats the object of the contract, or when it concerns a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated.

Berland's, Inc. of Tulsa v. Northside Village Shopping Ctr., Inc., 378 P.2d 860, 865 (Okla. 1963) (quoting Davis v. Gwaltney, 291 P.2d 820, 823 (Okla. 1955)); see also Okla. Stat. tit. 15, § 233. "'[F]ailure of consideration,'" which may be shown by parol evidence, includes "*the neglect, refusal, or failure of one of the parties to perform or furnish the consideration agreed upon*." Bonner v. Oklahoma Rock Corp., 863 P.2d 1176, 1186 (Okla. 1993).

Here, the claim is that the lack of effective repairs to the roof amounted to a partial failure of consideration. We note that, in lease cases, the related doctrine of constructive eviction has been held "broad enough to include many different situations where the whole or a substantial part of the premises is rendered unfit for the purpose for which it was leased. Among these are

-17-

landlord's failure to repair the leased premises or other parts of the building . . . ." 3 Milton R. Friedman, Friedman on Leases, § 29.301, at 1642-43 (4th ed. 1997) (footnotes omitted).

On the present record, there are disputed issues of material fact with respect to the rescission claim. Saul contends that the lease terms demonstrate that a repaired roof was not a paramount consideration of the parties. Although this argument could be accepted by a factfinder, it is insufficient to entitle Saul to judgment as a matter of law. The district court's grant of summary judgment in favor of Saul on the rescission claim was therefore erroneous.

Rescission "contemplates an annulment voiding the contract ab initio, accompanied by restoration of the parties to their pre-contract status." Panama Timber Co. v. Barsanti, 633 P.2d 1258, 1264 n.15 (Okla. Ct. App.), aff'd, 619 P.2d 872 (Okla. 1980)) (citing Okla. Stat. tit. 15, §§ 232-235); see also Beck v. Reynolds, 903 P.2d 317, 319 (Okla. 1995) ("When a contract is subject to rescission, the injured party may either (1) enforce the contract or (2) rescind the contract and all the parties will be restored to their original positions."). If plaintiffs ultimately obtain a recovery on their rescission claim and choose to void the lease agreements, then their claims for breach of contract will be superfluous. Until that time, however, plaintiffs may pursue these alternative or inconsistent

-18-

theories.  See Howell v. James , 818 P.2d 444, 447 (Okla. 1991).  Accordingly,

we address the contract claims below.

> **2.    Plaintiffs' breach of contract claims**

The district court granted Saul's motion for summary judgment on

plaintiffs' contract claims based primarily on its interpretation of paragraph 23

of the leases.  Paragraph 23 states, in pertinent part:

> **INSURANCE** .  (a) Tenant agrees to indemnify and save
> Landlord . . . harmless from any and all liabilities, damages,
> causes of action, suits, claims, judgements, costs and expenses
> of any kind (including attorneys fees):  (i) relating to or arising from
> or in connection with the possession, use, occupancy, management,
> repair, maintenance or control of the Premises, or any portion
> thereof; . . . or (iii) resulting from any default, violation or injury to
> person or property of [sic] loss of life sustained in or about the
> Premises.  To assure such indemnity, Tenant shall carry and keep in
> full force and effect at all times during the term of this Lease for the
> protection of Landlord . . . public liability and property damage
> insurance. . . .

Appellants' App. at 114.

The district court concluded that this provision barred plaintiffs' contract

claim because it met the three-pronged Oklahoma standard for testing the validity

of a contractual provision indemnifying a party against its own negligence.  The

standard is that:  "(1) the parties must express their intent to exculpate in

unequivocally clear language; (2) the agreement must result from an arm's length

transaction between parties of equal bargaining power; and (3) the exculpation

must not violate public policy." Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1420 (10th Cir. 1990).

The district court focused on the second prong and determined that the parties were not in unequal bargaining positions. It therefore concluded that the clause was enforceable. We agree with the district court's determination on the parties' relative bargaining positions. The more basic question, however, is whether the indemnity provision applies to this lawsuit at all. See Martin v. American Optical Co., 184 F.2d 528, 529 (5th Cir. 1950) (stating that "there is a greatly material difference between a covenant . . . releasing lessor from and agreeing not to sue him on claims accruing to lessee and covenants . . . agreeing to indemnify lessor and hold him harmless from claims of others"); Redding v. Gulf Oil Corp., 324 N.Y.S.2d 490, 493 (N.Y. Sup. Ct. 1971) (stating that a general indemnification clause does not indicate an intention to include injury to the lessee); but see Smith v. Seaboard Coast Line R.R. Co., 639 F.2d 1235, 1237, 1238-41 (5th Cir. 1981) (summarily affirming an attached district court order ruling that an indemnity clause shielded a lessor from suit by the lessee).

The case of Matthews v. Federal Compress & Warehouse Co., 632 F.2d 1199 (5th Cir. 1980), is very similar to the case at bar. In that case, as here, a tenant sued his landlord for damage attributable to a defective roof. The landlord contended that a lease provision requiring the tenant to indemnify the landlord

"against any liability or loss 'arising out of any cause associated with [the tenant's] business or use of the premises,'" included losses of the tenant.     Id. at 1201 (alteration in original).  Like plaintiffs, the tenant maintained that the indemnity clause "contemplates liability or responsibility to third parties and has no application to the case at bar."     Id. (quotation omitted).  There appeared to be no applicable state law cases which confirmed or refuted either party's contentions.  Under the circumstances, the Fifth Circuit concluded the district court "was mistaken in deciding, as a matter of law, that the     *indemnity* clause" barred the tenant's suit.    Id.

The Fifth Circuit's holding is transferable to the instant case.  Paragraph 23 is at least ambiguous as to whether or not it covers injury to the lessees, and there is no Oklahoma case law providing an authoritative interpretation.  Because the record before the district court does not contain sufficient evidence to demonstrate the intent of the parties on the scope of the provision, summary judgment cannot be based on paragraph 23.

Saul's alternative arguments are also insufficient to establish entitlement to judgment as a matter of law.  We agree with the district court that paragraph 16 of the leases precludes plaintiffs' recovery for property damage, but does not

necessarily bar their lost business claim. [5] The leases, standing alone, do not demonstrate that the parties intended to exclude liability for business losses. Moreover, there is no guidance from the Oklahoma Supreme Court concerning whether as a matter of law the term "property" damage, as used in the leases, includes business losses. Case law from other jurisdictions can be found on both sides of the issue. Compare Periphery Loungewear, Inc. v. Kantron Roofing

---

[5] Paragraph 16 provides, in pertinent part:

**REPAIRS BY LANDLORD** . Landlord agrees to make all necessary repairs during the term of this Lease or any extension thereof, to the roof of the Premises and all necessary structural repairs to the exterior walls and foundations, . . . provided that Tenant shall give Landlord written notice of the necessity for such repairs. Landlord shall not be liable to Tenant for any damage caused to the person or property of Tenant, its agents, employees or invitees, due to the Premises or any part or appurtenances thereof being improperly constructed or being or becoming out of repair or arising from the leaking, of . . . water, . . . or from any other cause whatsoever. Tenant agrees to report immediately in writing to Landlord any defective condition in or about the Premises known to Tenant which Landlord is required to repair, and failure to so report shall make Tenant liable to Landlord for any expense, damage or liability resulting from such defects. Landlord hereby reserves the exclusive right at any time and from time to time to install, use, repair, inspect and replace pipes, ducts, conduits and wires leading through or located adjacent to the Premises . . . in locations which do not materially interfere with Tenant's use thereof. . . . Landlord shall not be liable in any such case for inconvenience, disturbance, loss of business or any other annoyance arising from the exercise of any or all of the rights of Landlord in this Article 16.

Appellants' App. at 110.

Corp., 599 N.Y.S.2d 554, 556 (N.Y. App. Div. 1993) (stating that where property damage was not defined in a lease, the court would use the "well understood meaning with respect to insurance coverage as referring to tangible property rather than intangible property rights such as business interruption"); with Brookridge Party Ctr., Inc. v. Fisher Foods, Inc., 468 N.E.2d 63, 69 (Ohio Ct. App. 1983) (holding that language governing liability "'arising out of damage to any property'" includes liability for resulting business losses).

The additional argument that plaintiffs failed to trigger the duty to repair the roof by providing the written notice required by paragraph 16 does not "admit of disposition as a matter of law under the circumstances here, but must be decided . . . after a consideration of all the evidence." Matthews, 632 F.2d at 1201; see also Re/Max Specialists, Inc. v. National Life Ins. Co., 428 S.E.2d 654, 655 (Ga. Ct. App. 1993) (holding that it was reversible error to refuse to instruct the jury that "'a lease provision requiring written notice by tenant to landlord of defects which landlord is bound to repair is waived by the landlord when oral notice of defects is given and landlord acts upon such notice . . . without insisting upon written notice'") (alteration in original).

Finally, Saul argues that plaintiffs may not recover for breach of contract because their calculation of lost business is speculative and not within the

-23-

contemplation of the parties at the time the leases were signed.  Under Oklahoma

law,

> loss of future or anticipated profit--i.e. loss of expected monetary
> gain--is recoverable in a breach of contract action:  1) if the loss is
> within the contemplation of the parties at the time the contract was
> made, 2) if the loss flows directly or proximately from the
> breach--i.e. if the loss can be said to have been caused by the
> breach--and 3) if the loss is capable of reasonably accurate
> measurement or estimate.  An award in the form of a loss of profits,
> in fact, is generally considered a common measure of damages for
> breach of contract, it frequently represents fulfillment of the
> non-breaching party's expectation interest, and it often closely
> approximates the goal of placing the innocent party in the same
> position as if the contract had been fully performed.
>
> [W]here there is sufficient evidence presented on the issue of
> the recovery of special damages--including lost profits--what was or
> was not in the contemplation of the parties at the time of contracting
> is a question of fact to be determined by the trier of fact.

Florafax Int'l, Inc. v. GTE Market Resources, Inc., 933 P.2d 282, 292

(Okla. 1997) (citations omitted).

For summary judgment purposes, plaintiffs have adequately supported their

claim for loss of business.    See 3 Friedman on Leases, § 29.302, at 1655 ("It has

been said that a tenant may recover for loss of profits when this was in the

contemplation of the parties at the time the lease was made.  'Contemplation of

the parties,' as so used, probably means only that an injury to tenant's business

could reasonably be anticipated in case of a landlord's breach.") (footnote

omitted).  Saul has not shown that the claimed damages are so speculative that entry of summary judgment is appropriate.

### 3.  Saul's breach of contract claim

The district court also granted summary judgment on Saul's counterclaim for rents due and owing under the leases.  The entry of summary judgment is based on an explicit provision of the leases, that "[t]he Minimum Rent shall be payable to Landlord or its designated agent in advance, in equal monthly installments, without notice or demand therefor, and without deduction, recoupment or setoff . . . ."  Appellants' App. at 106.  However, the correctness of the ruling is dependent upon the outcome of plaintiffs' recission claim.       See Panama Timber Co.  , 633 P.2d at 1264 n.15.  Accordingly, the grant of summary judgment in favor of Saul on its counterclaim is reversed.

## III.  CONCLUSION

Because the district court's decision must be reversed on the merits, and the district court's denial of the motion to remand is erroneous, the action is REVERSED and REMANDED with instructions to vacate the judgment and to remand the action to the district court for Tulsa County, Oklahoma.  Plaintiffs' motion for attorneys' fees and costs is DENIED.  The parties must bear their own costs and fees.  All other pending motions are DENIED as moot.