**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2001**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

JUANA M. MARTIN; GERALD T.
MARTIN, individually and on behalf
of all persons similarly situated,

    Plaintiffs-Appellants,

v.

FRANKLIN CAPITAL CORPORA-
TION, a Utah corporation;
CENTURY-NATIONAL
INSURANCE COMPANY, a
California corporation,

    Defendants-Appellees.

No. 99-2131

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-96-1480-LH)

---

Michael P. Malakoff, Malakoff Doyle & Finberg, P.C., Pittsburgh, Pennsylvania
(Richard N. Feferman, Albuquerque, New Mexico, with him on the briefs), for
Plaintiffs-Appellants.

Jan T. Chilton, Severson & Werson, San Francisco, California (Jay D. Hertz,
Sutin, Thayer & Browne, Albuquerque, New Mexico, with her on the brief) for
Defendants-Appellees.

---

Before **SEYMOUR** and **MURPHY**, Circuit Judges, and **KANE**, Senior District Judge.[*]

---

**SEYMOUR**, Chief Judge.

---

[*] Honorable John L. Kane, Jr., Senior District Court Judge, District of Colorado, sitting by designation.

Gerald and Juana Martin appeal the district court's order dismissing their complaint with prejudice. We conclude that we have jurisdiction over this appeal, and that the district court lacked subject matter jurisdiction. Accordingly, we reverse and remand with directions to remand this action to state court.

**I**

The Martins originally brought this proceeding in New Mexico state court, individually and on behalf of all persons similarly situated, seeking damages under state statutory and common law for alleged illegalities with respect to automotive financing and insurance contracts. The plaintiff class alleged defendant Franklin Capital Corporation, which purchased their installment sales contracts from car dealers, deliberately overcharged them for required insurance coverage purchased through defendant Century National Insurance. Invoking diversity of citizenship, Century removed the case to federal court with the consent of Franklin. The Martins then filed a motion to remand to state court for lack of subject matter jurisdiction, arguing their claims did not meet the $50,000 amount-in-controversy requirement for diversity jurisdiction.[1]

---

[1] This action was filed in state court on September 13, 1996. At that time, 28 U.S.C.§ 1332 required the amount in controversy to exceed $50,000. Although Congress subsequently amended the statute to increase the jurisdictional amount to $75,000, the amendment applies only to cases filed on or after January 17,

(continued...)

In orders entered the same day, the district court denied the Martins' motion to remand, denied the Martins' motion for class certification, and granted Century's motion to dismiss for failure to state a claim. This left the Martins with an individual case against Franklin in the federal district court. The Martins subsequently requested that the court certify the order denying remand for immediate appeal under 28 U.S.C. § 1292(b), which the court denied. The district court order denying the Martins' motion to remand contains virtually no comment or analysis supporting its decision. However, in its memorandum opinion and order denying the Martins' section 1292(b) motion, the court addressed the amount-in-controversy requirement by stating "[i]t does not appear to a legal certainty that [the Martins'] claims are for less than $50,000 and I conclude that they are colorable for the purposes of conferring jurisdiction." Aplt. App., doc. 13 at 3.

It thus appears that, in assessing the evidence, the court required the Martins to prove to a legal certainty that their claims were below the jurisdictional amount rather than placing the burden on defendants to show by a preponderance of the evidence that the amount was met. The court also appears to have attributed to the Martins all of the attorneys fees requested on behalf of

[1](...continued)
1997. *See* Federal Courts Improvement Act of 1996, § 205, Pub. L. No. 104-317, 110 Stat. 3847, 3850 (Oct. 19, 1996).

the class. *See id.* at 6. The court held that any putative class members whose claims did not satisfy the jurisdictional amount were irrelevant because they had already been removed from the case by the court's order refusing to certify the class. *Id.*

The Martins reasserted their belief that the court lacked jurisdiction, and they requested an order dismissing their complaint with prejudice so they could immediately appeal the jurisdictional issue without expending further time and money in federal court. Noting that the Martins' dismissal request was motivated by their desire to take an immediate appeal and that defendants had failed to file a response, the district court granted a voluntary dismissal with prejudice.

On appeal, the Martins reassert their contention that the district court lacked subject matter jurisdiction over this action and therefore should have granted their motion to remand the case to state court. They contend that neither the complaint nor the notice of removal establishes by a preponderance of the evidence that the amount in controversy exceeds $50,000, and that the damages found by the district court reflect more than the amount claimed in their complaint. They also contend the court erred as a matter of law by failing to require each putative class member to independently meet the jurisdictional amount.

Defendants counter that the Martins waived their right to object to removal by failing to seek a remand within thirty days, citing 28 U.S.C. § 1447(c). They also maintain the Martins' individual claims satisfied the jurisdictional amount. Finally, they contend the class' punitive damages could be aggregated and attributed to each class member to meet the jurisdictional amount and, in any event, any failure by putative class members to satisfy individually the jurisdictional amount was cured by the court's denial of class certification. We address each argument in turn.

## II

### Appellate Jurisdiction

We first address whether we have appellate jurisdiction. We raised the issue sua sponte, requesting the parties to address whether a voluntary dismissal with prejudice under these circumstances constitutes a final, appealable order for purposes of 28 U.S.C. § 1291. In assessing whether appellate jurisdiction exists in these circumstances, our inquiry is twofold: is the order granting the voluntary dismissal final; and is there a case or controversy in light of the fact that plaintiff sought the dismissal. After considering authority from other circuits and the purposes of the final order rule, we conclude that we have jurisdiction over this appeal.

First, we are convinced the dismissal with prejudice here is a final order for purposes of appeal. Nothing is left pending in the district court and, because the dismissal is with prejudice, the Martins are precluded from filing another lawsuit. The dismissal did not reserve the Martins' right to return to district court to litigate any remaining issues. If they lose on their appeal of the order denying remand, the litigation is terminated entirely. We agree with those authorities holding that a dismissal order is final under these circumstances. *See, e.g., Woodard v. STP Corp.*, 170 F.3d 1043, 1044 (11th Cir. 1999) (voluntary dismissal with prejudice final); *John's Insulation, Inc. v. L. Addison & Assoc.*, 156 F.3d 101, 107 (1st Cir. 1998) ("most circuits hold that voluntary dismissals, and especially those with prejudice, are appealable final orders"); *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995) (judgment final when it bars claims forever); *see also* 15A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.8 (2d ed. 1992), at 623 (approving rule that holds judgment final when plaintiff who voluntarily dismisses abandons all remaining issues).

Viewing such a judgment as final does not undermine the final judgment rule by encouraging quasi-interlocutory appeals. "[I]f the plaintiff is unsuccessful in challenging the district court's action, then the dismissal operates as an adjudication on the merits and the litigation is terminated." *Concha*, 62 F.3d at

1507.  Judicial economy is furthered because when "the appellant voluntarily dismisses his action with prejudice and loses on appeal, the district court is saved the time and effort of conducting extended trial proceedings and there is in addition no possibility of piecemeal appeals."  *Id.* at 1508 n.8.

We also conclude that, even though the Martins requested dismissal, the appeal presents a case or controversy sufficient to support jurisdiction.  Because the Martins were convinced the district court lacked diversity jurisdiction, they did not want to expend the resources necessary to proceed in federal court to a judgment on the merits, only to have the case remanded to state court on appeal for lack of jurisdiction.  While such a dismissal may be technically voluntary, as a practical matter the Martins did not acquiesce in the judgment but rather were using dismissal to challenge the underlying ruling.  When, as here, a plaintiff believes a ruling is so prejudicial to his case he is willing to risk losing the right to litigate completely in order to challenge it, a case or controversy exists and he should be allowed to appeal.  *See John's Insulation*, 156 F.3d at 107 (voluntary dismissal with prejudice proper course of action when interlocutory ruling so prejudicial that proceeding in district court would waste resources).

Because the Martins appealed a final order in a case or controversy, we have jurisdiction to address the appeal.

## III

## Diversity Jurisdiction

In their motion to remand, the Martins asserted a lack of federal diversity jurisdiction on the ground their action does not meet the $50,000 amount-in-controversy requirement imposed by 28 U.S.C. § 1332(a). We review de novo a district court's determination of the propriety of removal. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076 (10th Cir. 1999). In assessing the district court's ruling, we bear in mind that "[t]he courts must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states," *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339 (10th Cir. 1998), and that the presumption is therefore "against removal jurisdiction," *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

### A.  The Burden of Establishing the Amount in Controversy.

When a case is originally brought in federal court, the plaintiff's claimed amount is presumed to support diversity jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). The same is not true, however, when the case has been removed from state court.

> In a removed case, unlike a case instituted in federal court, the plaintiff chose a state rather than federal forum. Because the plaintiff instituted the case in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end."

-9-

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) (quoting *St. Paul Mercury*, 303 U.S. at 290); *see also Miera*, 143 F.3d at 1340. Thus in a removed case, "[t]he defendant's claim that the amount in controversy exceeds $50,000 does not enjoy the *St. Paul Mercury* presumption of accuracy that the plaintiff's does." *Singer*, 116 F.3d at 376.

> Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when a plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

*Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

As the parties invoking the federal court's jurisdiction in this case, defendants bear the burden of establishing that the requirements for the exercise of diversity jurisdiction are present. *See Huffman*, 194 F.3d at 1079. We have held that "[t]he amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Laughlin*, 50 F.3d at 873. In this case, the complaint itself does not specify the amount of damages requested. Indeed, defendants in their notice of removal observe that "[t]he amount in controversy, exclusive of interest and costs, cannot be determined from the face of the complaint." Aplt. App., doc. 4 at 2. When, as here, the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of

the evidence.  *See, e.g., St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Singer*, 116 F.3d at 376; *United Food & Commercial Workers Union, Local 919 v. CenterMark Prop. Meridan Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994); *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993); *Varella v. Wal-Mart Stores, East, Inc.*, 86 F. Supp.2d 1109, 1111 (D. N.M. 2000); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (party asserting jurisdiction must prove jurisdictional prerequisites by a preponderance of evidence).[2]

Although this court has not expressly adopted the preponderance standard in these circumstances, we have stated that the requisite amount in controversy "must be *affirmatively established* on the face of either the petition or the removal notice."  *Laughlin*, 50 F.3d at 873 (emphasis added).  The italicized language requires at a minimum that the jurisdictional amount be shown by a preponderance of the evidence.  Because, as we discuss below, we conclude that defendants have failed to meet this burden, we need not decide whether a more stringent one should be applied.

---

[2] A few courts have placed greater or lesser burdens on defendants asserting removal jurisdiction based on diversity.  *See generally* 14C CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3275 (3d ed. 1998), at 89-95 (discussing standards).

## B. *Determination of Amount in Controversy*

We turn to a de novo review of the district court's conclusion that diversity jurisdiction is present here.[3] The complaint does not in any of its counts request a specific dollar amount. Nonetheless, the district court adopted defendants' construction of the Martins' pleading and concluded that the complaint itself established the requisite amount in controversy.[4] We have carefully reviewed the

_____

[3] We give short shrift to defendants' argument that the Martins waived federal diversity jurisdiction by failing to challenge the amount in controversy within thirty days. The governing statute expressly provides to the contrary: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As the Supreme Court has noted:

> section [1447(c)] differentiates between removals that are defective because of lack of subject-matter jurisdiction and removals that are defective for some other reason . . . . For the latter kind of case, there must be a motion to remand filed no later than 30 days after the filing of the removal notice. For the former kind of case, remand may take place without such a motion and at any time.

*Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998) (citations omitted). In *Laughlin v. Kmart Corp.*, 50 F.3d 871 (10th Cir. 1995), for example, we raised the issue of diversity jurisdiction on appeal and concluded it was lacking, even though the plaintiff "neither objected to removal nor questioned the amount in controversy." *Id.*

[4] We have held that a defendant's economic analysis of the plaintiff's claims for damages, "prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum, does not establish the existence of jurisdiction at the time the motion was made. . . . [T]he requisite amount in controversy . . . must be affirmatively established on the face of either the petition or the removal notice." *Laughlin*, 50 F.3d at 873. At the hearing below, the

(continued...)

-12-

complaint and we agree with the Martins that it does not demonstrate by a preponderance of the evidence claims in excess of $50,000.  For example, it appears defendants simply viewed every dollar amount mentioned in the complaint as an item of damages claimed by the Martins without regard to allegations making clear the Martins were not in fact seeking all those amounts.[5] In addition, while the Martins did seek treble damages under one state statute, defendants have failed to establish what specific damages were recoverable under that statute and instead merely assumed that all amounts mentioned in the complaint were subject to trebling.

---

[4](...continued)
district court recited and adopted the amounts set out by defendants' briefs in support of jurisdiction.  *See* Aplt. App., doc. 20 at 46.  The record on appeal does not include these briefs and it is arguable, given our holding in *Laughlin*, that they should not have been considered by the district court.  We need not decide whether the court erred in this regard, however, in view of our conclusion that the Martins' complaint does not support the construction defendants placed upon it in those briefs.

[5] Defendants apparently included in their calculation finance charges of over $8000 and insurance premiums of over $7000 despite allegations in the complaint that because the Martins defaulted on their installment contract, they made only a few payments on the finance charges and no payments on the insurance premiums, and sought to recover only the charges they actually paid. Defendants included two repossession charges as items of damages although the Martins did not allege that the first of these, in the amount of $420, was illegal. Defendants likewise included a down payment of almost $4000 which the Martins were not attempting to recover.  On appeal, defendants also argue that the entire amount of the sales contract is to be included, notwithstanding that the Martins, while seeking rescission of the contract, sought as damages only the amounts they had actually paid under it.

-13-

Because we conclude that the amount-in-controversy requirement is not satisfied on the face of the complaint, we turn to the notice of removal. As mentioned above, defendants conceded in their removal notice that the amount in controversy could not be determined from the face of the complaint. Aplt. App., doc. 4 at 2. In contending that the requisite amount was nonetheless satisfied, defendants began by summarizing the allegations and the requested relief asserted by the Martins. This mere summary, of course, does not provide the requisite facts lacking in the complaint. Defendants also asserted that jurisdiction was satisfied because the attorneys fees and the punitive damages claimed by the entire class could be aggregated and attributed to the Martins in determining the amount in controversy, and that so long as the Martins as class representatives met the jurisdictional amount, the other class members fell within the court's supplemental jurisdiction regardless of the value of their claims. As we discuss below, none of these assertions supports the existence of diversity jurisdiction.

1.      **Aggregation of Punitive Damages**

We turn first to defendants' contention, both in their removal notice and on appeal, that the punitive damage claims of the putative class members may be aggregated and attributed to the Martins and to each class member, and that these aggregated damages satisfy the jurisdictional amount with respect to each member of the putative class. In support of this argument, defendants rely on the cases of

-14-

*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), and *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995), both of which have been disapproved by the circuits that decided them. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1073-77 (11th Cir. 2000) (explaining *Tapscott* not valid precedent because it conflicts with earlier ruling on same issue); *Ard v. Transcont'l Pipe Line Corp.*, 138 F.3d 596, 601-02 (5th Cir. 1998) (*Allen* decision due to peculiarity of Mississippi law and does not represent precedent for any other state). Indeed, all of the circuits considering the issue now hold that punitive damages cannot be aggregated and attributed in total to each member of a putative class for purposes of satisfying the amount-in-controversy requirement of diversity jurisdiction. *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1264-65 (11th Cir. 2000); *Ard*, 138 F.3d at 600-02; *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1430-31 (2d Cir. 1997); *see also Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (implicitly rejecting aggregation of punitive damages by concluding that "[t]he plaintiffs in this case would have to recover on average at least $47,118.36 in punitive damages to satisfy 28 U.S.C. § 1332").

Although this court has not ruled directly on the matter, we have pointed out that the Supreme Court has historically interpreted section 1332 "to require plaintiffs who have separate and distinct claims, but unite together in a single

suit, to each meet the jurisdictional amount in controversy." *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 637(10th Cir. 1998). We observed that the Court has therefore only permitted aggregation when "a single plaintiff seeks to aggregate . . . his own claims," or when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* As we discuss below, we now hold, in light of the language in *Leonhardt* and the analysis of our sister circuits, that punitive damages may not ordinarily be aggregated and attributed in total to each member of a putative class for purposes of satisfying diversity jurisdiction.

The court in *Gilman* explained the reasoning supporting this conclusion.

> As one court expressed the principle, the "paradigm cases" allowing aggregation of claims "are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res."

*Gilman*, 104 F.3d at 1423 (quoting *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D. N.J. 1996)). The court pointed out that even though a class claim for punitive damages may create a single pool of recovery, "a common interest in a pool of funds is not the type of interest that permits aggregation of claims under the 'common fund' doctrine." *Id.* at 1430. Each class member could sue separately for punitive damages and have his right to recovery determined without implicating the rights of every other person claiming such damages. *Id.* Because

-16-

a class member's right to punitive damages is separate, distinct, and independent from those of other class members, the class claim for such damages does not seek to enforce a single right in which the class has a common and undivided interest. Punitive damages therefore may not be aggregated in a class action and attributed in total to each member of the class. We agree with *Gilman* and the other courts, and we reject defendants' argument that the jurisdictional amount with respect to the Martins is satisfied on the basis of the aggregated claims of the class members to punitive damages.

**2. Aggregation of Attorney Fees**

In their removal notice, defendants also assert that "[t]he attorney fees of the entire class are attributable to the named plaintiffs for purposes of satisfying the jurisdictional amount." Aplt. App., doc 4 at 3. Although defendants do not present this argument directly on appeal, they contend that all of the fees requested by the Martins should be considered in determining whether their claims satisfy the amount in controversy, in effect attributing all the fees that will potentially be recovered in this putative class action to the class representatives.

Courts have generally held, under the same rationale applied to preclude the aggregation of puntive damages, that attorneys fees cannot be aggregated for purposes of diversity jurisdiction. *See, e.g., Morrison*, 228 F.3d at 1266-68 (when each class member could recover attorneys fees if he sued separately, right to

-17-

recover fees was separate and distinct and could not be aggregated); *see also Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (aggregation of attorneys fees would conflict with Supreme Court authority requiring plaintiffs with separate and distinct claims to each meet jurisdictional amount).[6] We agree and conclude that potential attorneys fees requested on behalf of the class may not be aggregated and attributed entirely to the Martins in assessing whether they meet the amount in controversy.[7]

In view of our conclusions that neither the face of the complaint nor the removal notice demonstrate that the Martins' claims will exceed $50,000, and that neither the punitive damages nor the attorneys fees sought by the class can be attributed entirely to the Martins as class representatives, we hold defendants have failed to show by a preponderance of the evidence that the Martins' claims

---

[6] In their removal notice, defendants cited *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995), as support for their contention that attorneys fees can be aggregated. As the Fifth Circuit has observed, however, the holding in *Abbott Laboratories* is peculiar to a Louisiana statute and "[t]he standard approach to awards of attorney's fees in a class action context is to distribute them pro rata to all class members, both named and unnamed." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.5 (5th Cir. 2001).

[7] The result might be different if the state statute under which fees are sought expressly awards those fees solely to the class representatives. *See, e.g., H & D Tire & Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330-31 (5th Cir. 2000). Defendants have made no showing that the statutes at issue in this case do so.

meet the amount in controversy necessary to the exercise of diversity jurisdiction.[8]

Because the Martins' claims do not meet the jurisdictional amount, the disposition of the class claims by the district court is irrelevant. Although we therefore need not address the remaining arguments with respect to the class, we make the following observations. This court has specifically rejected defendants' contention that so long as the class representatives meet the jurisdictional amount, all class members fall within the court's supplemental jurisdiction. *See Leonhardt*, 160 F.3d at 638-41 (rejecting argument that "the enactment of 28 U.S.C. § 1367, concerning supplemental jurisdiction, altered the historical aggregation rules under § 1332 for class actions," and concluding enactment of §

---

[8] We reject the argument based on *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996), that diversity jurisdiction exists nonetheless because the district court refused to certify the class and the resulting deletion of the putative class members cured any jurisdictional defect their presence might earlier have created. Although the Supreme Court held in *Caterpillar* that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered," *id.* at 64, the Court also observed that "if, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be vacated," *id.* at 76-77 (italics deleted). Because defendants failed to establish that diversity jurisdiction is present with respect to the Martins, the jurisdictional defect remained at the time of judgment. *See Gilman*, 104 F.3d at 1421 (when removing defendant fails to establish subject matter jurisdiction by the time judgment is entered, judgment must be vacated and remanded with instructions to remand to state court).

1367 did not overrule preexisting authority holding "each plaintiff in a diversity-based class action must meet the jurisdictional amount in controversy under § 1332").[9] In any event, because the class representatives here do not meet the jurisdictional amount, supplemental jurisdiction over class members would not be available.[10]

In sum, we hold that we have appellate jurisdiction over this final, appealable order. Defendants have failed to establish the requisite amount in controversy, and the district court therefore lacked subject matter jurisdiction.

---

[9] In *Abbott Laboratories*, 51 F.3d 524, the Fifth Circuit reached a result directly contrary to our holding in *Leonhardt*. The Supreme Court granted certiorari in *Abbott Laboratories* to address whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, overruled the authority upon which this court relied in *Leonhardt, see Free v. Abbott Labs., Inc.*, 528 U.S. 1018 (2000), and affirmed the Fifth Circuit's decision by an equally divided Court, *see Free v. Abbott Labs., Inc.*, 529 U.S. 333 (2000) (per curiam). An unexplained affirmance by an equally divided court is not entitled to any precedential weight. *See Rutledge v. United States*, 517 U.S. 292, 304 (1996). *Leonhardt* accordingly remains controlling law in this circuit.

[10] The only allegations in the complaint relevant to the putative class members are assertions that their individual damages "are too small in number to justify the expense and effort required to bring suit separately," Aplt. App., doc. 2 at 14, and that the "Martins claims are not only typical but identical to the claims of the members of the Class," *id.* at 16. These allegations do not establish individual claims in excess of $50,000, particularly given our holding that neither attorneys fees nor punitive damages may be aggregated and attributed in total to each class member. Accordingly, we conclude that defendants have failed to establish the amount in controversy with respect to any of the putative class members.

-20-

Accordingly, we **REVERSE** the judgment of the district court and **REMAND**

with directions to remand this action to state court.