**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 2004**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

GERALD T. MARTIN and JUANA M.
MARTIN, individually and on behalf of all
persons similarly situated,

     Plaintiffs-Appellants,

v.

FRANKLIN CAPITAL CORPORATION, a
Utah corporation; and CENTURY-NATIONAL
INSURANCE COMPANY, a California
corporation,

     Defendants-Appellees.

No. 02-2048

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-96-1480-LH)**

---

James M. Pietz of Malakoff Doyle & Finberg, P.C., Pittsburgh, Pennsylvania
(Michael P. Malakoff of Malakoff Doyle & Finberg, P.C., Pittsburgh,
Pennsylvania; and Richard N. Feferman of Albuquerque, New Mexico, on the
briefs), for Plaintiffs-Appellants.

Jan T. Chilton of Severson & Werson, San Francisco, California, for Defendant-
Appellee Franklin Capital Corporation.

Stevan Douglas Looney (Jay D. Hertz on the brief) of Sutin, Thayer & Browne,
Albuquerque, New Mexico, for Defendant-Appellee Century-National Insurance
Company.

Before **SEYMOUR** and **BRISCOE**, Circuit Judges, and **PAYNE**[*], District Judge.

**SEYMOUR**, Circuit Judge.

Gerald T. Martin and Juana M. Martin (Martins) sought an award of attorney's fees and expenses pursuant to 28 U.S.C. § 1447(c) from Franklin Capital Corporation and Century-National Insurance Company (defendants) after this court determined defendants should not have removed the instant action to federal court. The district court denied the Martins' request for fees and expenses, and they appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

In September 1996, the Martins filed a lawsuit against defendants in New Mexico state court. On their behalf and on behalf of all persons similarly situated, the Martins sought damages under state statutory and common law theories for alleged illegalities with respect to automobile financing and insurance contracts they had entered into with defendants. About a month after the Martins

---

[*]The Honorable James H. Payne, Chief District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

filed their complaint, defendants removed the action to federal court based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441. The Martins raised no objection to defendants' removal at the time and did not seek remand. Over a year later, and during a hearing before the district court on defendants' motion to dismiss, the Martins first questioned whether the court possessed jurisdiction over the case. The Martins subsequently filed a motion to remand the action to state court for lack of subject matter jurisdiction on the basis that their claims did not meet the $50,000 amount in controversy requirement for diversity jurisdiction.[1]

In opposition to the Martins' motion, defendants argued variously the amount in controversy requirement was satisfied because the Martins' complaint sought punitive damages of more than $50,000 in the aggregate; sought attorney's fees of more than $50,000 in the aggregate; and sought monetary relief for the named plaintiffs for more than $50,000. The district court agreed with defendants and denied the Martins' motion to remand, finding "[t]he allegations of the complaint and the contents of [defendants'] notice of removal demonstrate the requisite $50,000 amount in controversy." Aplt. App. at 263.

---

[1]This action was filed in state court on September 13, 1996. At the time, 28 U.S.C. § 1332 required the amount in controversy to exceed $50,000. The amount in controversy requirement has since been increased to $75,000 and applies to cases filed on or after January 17, 1997. *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (Oct. 19, 1996).

The Martins requested the district court certify its order denying remand so they could seek interlocutory appeal under 28 U.S.C. § 1292(b), which the court denied. The Martins subsequently petitioned the court to grant judgment against them in order to permit an immediate appeal on the question of jurisdiction. The district court granted the Martins' voluntary dismissal with prejudice and they filed an appeal.

In *Martin v. Franklin Capital Corp.*, 251 F.3d 1284 (10th Cir. 2001) (*Martin I*), we reversed the district court's ruling. In the course of our analysis, we rejected defendants' argument that "the punitive damages claimed by the entire class could be aggregated and attributed to the Martins in determining the amount in controversy" for jurisdictional purposes. *Id.* at 1291. We also rejected defendants' contentions that an aggregation of attorney's fees or the amount of relief requested by the Martins as class representatives satisfied the amount in controversy requirement. *Id.* at 1291, 1293. Accordingly, we remanded with directions that the case be sent back to state court. *Id.* at 1294.

Upon returning to the district court, the Martins moved for an award of attorney's fees and expenses pursuant to § 1447(c), which grants the district court discretion to award attorney's fees incurred as a result of removal when a case is remanded. The district court denied the Martins' request, determining that at the time defendants removed the case to federal court, they had objectively

reasonable legal grounds to believe removal was proper. The Martins challenge on appeal the district court's denial of attorney's fees and expenses.

## II

The language of § 1447(c) directs that the award of attorney's fees rests squarely within the discretion of the district court when a remand is ordered. *See* § 1447(c) ("An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (emphasis added)). Given our decision in *Martin I* that removal was improper in this case, the district court had discretion to award attorney's fees to the Martins if it believed fees were appropriate. The district court determined defendants possessed objectively reasonable grounds to believe removal was proper and therefore declined to award fees to the Martins. We review that decision for abuse of discretion. *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997); *Daleske v. Fairfield Cmtys, Inc.*, 17 F.3d 321, 323 (10th Cir. 1994). We review *de novo* the district court's legal analysis underlying its decision. *Daleske*, 17 F.3d at 323.

In challenging the district court's ruling, the Martins assert that in a case where a defendant's removal to federal court serves as what the Martins

characterize as "test litigation" regarding the existence of federal jurisdiction, and jurisdiction is subsequently found to be lacking, fees should be awarded to the plaintiff as a matter of course. They also assert the district court did not properly apply the standard articulated by our court in *Suder* and *Daleske*. Building upon their test litigation argument, they contend the district court should have adhered to what they argue is a more "plaintiff-based standard" which they say has been adopted by the Seventh and Ninth Circuits, citing *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000), and *Hofler v. Aetna US Healthcare of Ca.*, 296 F.3d 764 (9th Cir. 2002).[2] Under this approach, the Martins urge that attorney's fees should be awarded when removal is deemed improper, irrespective of whether the defendant had a legitimate or objective basis for believing in the propriety of removal. We are not persuaded.

As we have recognized:

> In deciding whether to award costs under § 1447(c), the key factor is the propriety of defendant's removal. The district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c).

*Excell, Inc.,* 106 F.3d at 322 (internal citations omitted). On the other hand,

_____

[2]In this context, we note that the Martins' citation to and reliance on *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000), is misplaced. The controversy in *Hotline* did not involve entitlement to fees but focused instead on the appropriate amount of fees awarded. *Id.* at 366-68. *But see Sirotzky v. New York Stock Exch.*, 347 F.3d 985, 987 (7th Cir. 2003) ("provided removal was improper, the plaintiff is *presumptively* entitled to an award of fees").

attorney's fees may be denied where the defendant "had a fair basis for removing the case." *Daleske*, 17 F.3d at 324.

Other circuits have also recognized that the award of fees under § 1447(c) is left to the wide discretion of the district court once remand is ordered. *See, e.g., Balcorta v. Twentieth Century Fox-Film Corp.*, 208 F.3d 1102, 1105 (9th Cir. 2000) (reviewing for abuse of discretion district court's fee award determination); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) ("The decision of the district court to award or not to award attorney's fees is reviewed for an abuse of discretion."); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996) ("a district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)"); *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993) (agreeing that "the . . . statute affords a great deal of discretion in fashioning awards of costs and fees") (quotation omitted)); *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) (statute provides district courts with discretion in how to award costs and fees). While the Seventh Circuit has suggested there is a presumption that fees be awarded to plaintiffs under § 1447(c) upon a finding of improper removal, *see e.g., Sirotzky v. New York Stock Exch.*, 347 F.3d 985, 987 (7th Cir. 2003), "[n]evertheless, the

entitlement is not automatic – the presumption is not irrebuttable . . . ." *Id.*[3]

Between these varied expressions regarding § 1447(c), there remains the broadly accepted position that if a defendant's removal could be fairly supported by the law at the time, even if later deemed incorrect, a district court's discretionary decision not to award fees is appropriate. Indeed, most courts do not impose fees when the defendant had a legitimate ground for seeking removal. *See* 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.41[3][a][ii] (3d ed. 1997); *see also* 14C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3739 (3d ed. 1998) (noting award of fees is at discretion of district court, and fees may be denied "when there are reasons to believe that the removability of the case was plausible").

The Martins incorrectly claim the district court employed a standard other

---

[3]Contrary to the Martins' assertion, we are not convinced the Ninth Circuit follows a similar approach. In *Balcorta v. Twentieth Century Fox-Film Corp.*, 208 F.3d 1102 (9th Cir. 2000), the court made clear that "it may be within the discretion of the district court not to award fees" when a defendant's attempt to remove the action had a sufficient basis in the law, and also that the circuit's "case law does permit an award of fees when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law." *Id.* at 1106 n.6; *see also Hofler v. Aetna US Healthcare of Ca.*, 296 F.3d 764, 770 (9th Cir. 2002) ("fees are proper when removal is wrong as a matter of law, even though the defendant's position may be 'fairly supportable'"). In other words, in the Ninth Circuit, as in our circuit, if defendant's removal position is objectively reasonable under the law, the district court may, in its discretion, either award attorney's fees to the plaintiff or decline to award fees. The decision is then reviewed for an abuse of discretion.

than that required by our circuit. In accordance with *Suder* and *Daleske*, the district court recognized that a plaintiff is not automatically entitled to attorney's fees simply because removal was ultimately determined to be improper. Instead, relying on *Valdes*, 199 F.3d at 292, it determined it should "evaluate the merits of Defendants' removal action at the time it was filed." Aplt. App. at 344; *see also Valdes*, 199 F.3d at 293 ("the question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper"). This characterization accords with our decision in *Daleske*, in which we upheld a denial of fees where the defendant "had a fair basis for removing the case." 17 F.3d at 324. Upon determining that defendants' removal position was objectively reasonable at the time they sought removal, the court exercised its discretion and declined to award fees to the Martins. As we discuss in more depth below, we find no fault in the district court's articulation or implementation of the fee award standard.

## III

Having determined the district court employed the proper standard in deciding whether to award fees to the Martins, we now examine whether the court correctly concluded that when defendants removed the underlying action in October 1996, they had a legitimate basis to believe the federal court could

exercise jurisdiction over the case. *Valdes*, 199 F.3d at 293; *Daleske*, 17 F.3d at 325. While a close question, we agree with the district court that at the time defendants removed this action to federal court on the basis of aggregating punitive damages, they "had objectively reasonable grounds to believe the removal was legally proper."[4] Aplt. App. at 347.

In support of their motion to remove to federal court, defendants contended that "punitive damage claims in a class action suit may be considered in the aggregate when determining the amount in controversy." *Id.* at 3. In making this argument, defendants relied on case law from the Fifth and Eleventh Circuits, which at the time indicated that aggregation of punitive damages in a class action suit was permissible to reach the amount in controversy requirement for diversity jurisdiction. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996); *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995). Although these cases were subsequently severely limited and overruled by their respective circuits, *see H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000); *Ard v. Transcon. Gas Pipe Line Corp.*, 138 F.3d 596, 601-02 (5th Cir.

---

[4]Because we agree with the district court's conclusion that defendants' removal to federal court on an aggregation of punitive damages theory was objectively reasonable, as well as with the court's subsequent refusal to award fees to the Martins on the basis of that argument, we need not address defendants' remaining positions supporting removal.

-10-

1998), *Tapscott* and *Allen* represented viable authority in October 1996 upon which defendants could rely to support their petition for removal.

As noted above, in *Martin I* we rejected defendants' argument regarding aggregating punitive damages. We commented on the demise of *Tapscott* and *Allen*, and we noted that "all of the circuits considering the issue *now* hold that punitive damages cannot be aggregated and attributed in total to each member of a putative class for purposes of satisfying the amount-in-controversy requirement of diversity jurisdiction." *Martin I*, 251 F.3d at 1292 (emphasis added) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1264-65 (11th Cir. 2000); *Ard*, 138 F.3d at 600-02; *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1430-31 (2d Cir. 1997); *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996)). Based on this precedent, we joined these other circuits in concluding that the amount in controversy requirement in a class action suit may not be satisfied by aggregating punitive damages. *Id.* at 1293.

On remand, the district court emphasized that we relied primarily on case law post-dating defendants' October 1996 removal to federal court in reversing the district court's earlier ruling. Likewise, the court pointed out that the Fifth and Eleventh Circuit rulings undermining *Allen* and *Tapscott* were decided several years after the removal action in this case. Finally, the court took special notice of our comment that we had not previously "ruled directly on [the] matter" of

aggregating punitive damages. Aplt. App. 345 (quoting *Martin I*, 251 F.3d at 1292). The district court stated accordingly that

> [b]ased on the language contained in this Tenth Circuit, and given the history of the law in this area, I am unable to conclude that the removal was improper *ab initio* . . . . It appears that the Tenth Circuit remanded [this case] largely based on changes in the law during the time between the removal (1996), and its opinion (2001).

*Id.* at 345-46. The district court did not err in this ruling.

We acknowledge that in October 1996, several district courts, including some in our own circuit, had rejected the approach adopted in *Tapscott* and *Allen*. *See, e.g., Bernard v. Gerber Food Prods. Co.*, 938 F. Supp. 218, 222-23 (S.D.N.Y. 1996); *Bishop v. Gen. Motors Corp.*, 925 F. Supp. 294, 297-99, 301-02 (D.N.J. 1996); *Asten v. Southwestern Bell Tel. Co.*, 914 F. Supp. 430, 433-34 (D. Kan. 1996); *Visintine v. Saab Auto. A.B.*, 891 F. Supp. 496, 498-99 (E.D. Mo. 1995); *Copeland v. MBNA Am., N.A.*, 820 F. Supp. 537, 541-42 (D. Colo. 1993). Moreover, the courts in both *Tapscott* and *Allen* sidestepped circuit precedent which, according to *H&D Tire* and *Cohen*, should have guided them to conclude it was not permissible to aggregate punitive damages in a class action suit to establish diversity jurisdiction. *See H&D Tire*, 227 F.3d at 330; *Cohen*, 204 F.3d at 1076. In *Lindsey v. Alabama Tel. Co.*, 576 F.2d 593 (5th Cir. 1978), a class action, the court had held that claims of individual class members "cannot be aggregated for the purpose of satisfying this jurisdictional predicate." *Id.* at 594.

-12-

While the court did not specifically discuss the punitive damages claim of one million dollars, it reversed the removal decision because the complaint failed to allege the number of class members, an unnecessary result if punitive damages could be aggregated.[5] *Id.* at 595.

Oddly enough, *Lindsey* was cited in both *Tapscott* and *Allen*, although neither decision devoted much discussion to it. *See Tapscott*, 77 F.3d at 1357 n.9 (referencing *Lindsey* for general proposition that "each putative class member must satisfy" jurisdictional requirements); *Allen*, 63 F.3d at 1332 n.9 (noting disagreement among district courts in Fifth Circuit on whether joint claims of punitive damages constituted common and undivided interests allowing for aggregation). When the Fifth and Eleventh Circuits revisited the *Allen* and *Tapscott* decisions, both circuit courts referred to the pre-existing and conflicting precedent of *Lindsey* and determined it controlled the question of whether punitive damages could be aggregated. *See H&D Tire*, 227 F.3d at 330; *Cohen*, 204 F.3d at 1076. Nevertheless, that the courts in both *Tapscott* and *Allen* cited

_____

[5]*Lindsey v. Alabama Tel. Co.*, 576 F.3d 593 (5th Cir. 1978), was decided before the Fifth Circuit was divided into two circuits on October 1, 1981, resulting in the creation of the Eleventh Circuit. The Eleventh Circuit subsequently held that decisions handed down by the Fifth Circuit prior to September 30, 1981, would be binding precedent in the Eleventh Circuit. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000); *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981). Therefore, *Lindsey* serves as binding precedent for both the Fifth and Eleventh Circuits.

-13-

*Lindsey* gives weight to the argument that the answer to whether punitive damages could be aggregated in the Fifth and Eleventh Circuits was in flux. While *Lindsey*'s precedent ultimately prevailed, the *Tapscott* and *Allen* courts' seeming rejection of *Lindsey*'s punitive damages analysis created a legitimate basis on which defendants could rely to support their aggregation argument.

In challenging defendants' contentions that there existed legitimate grounds to believe punitive damages could be aggregated in order to satisfy the amount in controversy requirement, the Martins assert the Supreme Court in *Snyder v. Harris*, 394 U.S. 332 (1969), and this circuit in *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503 (10th Cir. 1991), made clear that any argument regarding the aggregation of punitive damages in a class action case would be rejected outright. We disagree. In *Snyder*, the Supreme Court reiterated the general rule "that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." 394 U.S. at 335. But the Court noted an exception to this non-aggregation rule, stating in part that aggregation would be permitted "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* Hence, under *Snyder*, there was room to argue that the nature of a punitive damage claim in a class action suit was common and undivided, therefore possibly permitting aggregation.

-14-

The courts in *Tapscott* and *Allen* tested the *Snyder* exception and held that punitive damage claims could be deemed common and undivided based on the characterization of punitive damages in the two states in those respective cases. Therefore they could be aggregated for the purposes of meeting the amount in controversy requirement. *Tapscott*, 77 F.3d at 1357-59; *Allen*, 63 F.3d at 1334-35. So holding, the courts reached a supportable conclusion that the aggregation of punitive damages was permitted under the *Snyder* exception.

In *Justice*, our court acknowledged *Snyder*'s general rule barring aggregating claims of multiple plaintiffs where those claims are separate and distinct, rather than common and undivided. 927 F.2d at 504. However, we did not devote any further discussion to whether the aggregation of common claims was permitted. Rather, we focused on "whether state law or federal common law determines if the claims are separate and independent." *Id.* We noted that

> federal law is used to determine whether the claims are separate and independent, and state law determines the nature of the claims to which the federal law test is applied. In other words, state law determines the character of plaintiff's claim, and federal law determines whether that claim meets the standard of Section 1441(c).

*Id.* (internal citation omitted).[6] We then examined the nature of the plaintiffs'

---

[6]*See also* 14C CHARLES ALAN WRIGHT ET AL. FEDERAL PRACTICE AND PROCEDURE § 3724 (3d ed. 1998). The Martins vigorously assert that because we had previously recognized in *Justice* that federal law determines whether claims are separate and independent, defendants' reliance on *Tapscott* and *Allen* was

(continued...)

claims, determined they were in fact separate and independent, and held they satisfied the amount in controversy requirement without aggregation. *Id.* at 504-05. Contrary to the Martins' assertions, neither *Snyder* nor *Justice* directly addressed the specific question of whether a punitive damage claim in a class action suit may be aggregated for jurisdictional purposes.

In sum, in October 1996, when defendants in the instant case removed this action to federal court, they possessed legitimate grounds upon which to believe punitive damage claims could be aggregated in a class action suit in order to satisfy the amount in controversy requirement. We consequently agree with the district court that based on the law existing at that time, defendants possessed "objectively reasonable grounds to believe the removal was legally proper." Aplt. App. at 347. Given the uncertain state of the law on aggregation of punitive

---

[6](...continued)
unwarranted. However, as we also recognized in *Justice*, state law often plays a role in determining whether a case can be removed. Professor Wright begins his discussion by stating "*[b]oth* federal and state law play a part in determining the removability of a case under Section 1441(c)," noting that "state law determines the substantive character of the plaintiff's claim." *Id.* For example, "state law is relevant to the question of whether an alleged liability is joint and federal law controls whether a case concerning joint liability is removable." *Id.* (emphasis added); *see also, e.g., Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1280-81 (11th Cir. 2001) (referring to state law to determine nature of punitive damages and then holding state characterization does not allow for aggregation); *Spriggs v. Wolf*, 496 F. Supp. 990, 991 (W.D. Okla. 1979) (court looked to Oklahoma law to determine if garnishment proceeding was separate from other claims asserted in action); *Anderson v. Union Pac. R.R. Co.*, 200 F. Supp. 465, 467 (D. Kan. 1962) (local law determines whether claim is joint or several in character).

damages when defendants removed this action, we cannot say the district court abused its discretion in declining to award fees to the Martins.

We **AFFIRM** the judgment of the district court.