FILED
United States Court of Appeals
Tenth Circuit

January 15, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROSE WOODS,

     Plaintiff - Appellant,

v.

ROSS DRESS FOR LESS, INC., a foreign corporation,

     Defendant - Appellee,

and

MEGAN BUTLER, an individual,

     Defendant.

No. 19-5089
(D.C. No. 4:18-CV-00327-TCK-JFJ)
(N.D. Okla.)

_____

**PUBLISHED DISSENT**
_____

Before **HARTZ**, Circuit Judge.
_____

## I.    OVERVIEW

I confess that I am baffled by the majority opinion. Its reasoning begins well enough. It correctly recognizes that when the district court entered judgment there was not the diversity of citizenship necessary for federal jurisdiction because Ms. Woods, the plaintiff, and Ms. Butler, an unserved defendant, were both citizens of Oklahoma. But its reaction to the jurisdictional flaw—remanding for the district court to decide whether to cure the flaw by dismissing Ms. Butler—is itself flawed because this court should cure

the flaw by simply dismissing her ourselves. I will address the governing law in more depth later; a sketch will suffice for now.

To begin with, the remand accomplishes nothing but wasting time and effort. The dismissal of Ms. Butler by the district court is virtually inevitable. True, there will be occasions when dismissal of the nondiverse defendant would be improper; and sometimes fact-finding—which is better conducted by the district court—is necessary to assess the propriety of dismissal. *See, e.g.*, *Ravenswood Inv. Co., LP v. Avalon Corral. Servs.*, 651 F.3d 1219, 1225–26 (10th Cir. 2011). But the record in this case compels the conclusion that dismissal is singularly appropriate and in the interests of all the parties. Ms. Woods filed her complaint more than two years ago. When Ms. Butler was not served within 90 days, the district court, either on its own initiative or on motion from a party, could have dismissed Ms. Butler as a defendant absent a showing by Ms. Woods of good cause why she had not yet served Ms. Butler. *See* Fed. R. Civ. P. 4(m); *Henderson v. United States*, 517 U.S. 654, 661–63 (1996). Yet Ms. Woods has not even hinted at good cause, and the record establishes that there is none. She has made no attempt to serve Ms. Butler, even when Ms. Butler appeared for a deposition. Indeed, it appears that the parties simply assumed (incorrectly) that Ms. Butler had never become a party to the case because she was not timely served. As will be set forth in more detail below, both Ms. Woods and Ross have expressed their opposition to a remand devoted to determining whether to dismiss Ms. Butler, acknowledging that dismissal of Ms. Butler would be inevitable. The dismissal would merely formalize what the district court and the parties had already assumed: namely, that Ms. Butler was not a party when the court entered

2

summary judgment. On remand the district court will surely recognize reality by dismissing her, perhaps even by an order entered nunc pro tunc to some time before judgment was entered. At that point the district court need take no further action. Ms. Woods can then pursue another appeal, and this court can proceed as we should be doing on this appeal. That is, as discussed below, we can determine whether the summary judgment should be affirmed, and, if not, order that the case be remanded to state court.

Nor is remand necessary for technical reasons. On the contrary, the remand is an abdication of this court's responsibility. When a district court has already taken a case to judgment, the appellate court has a duty to try to preserve a proper judgment, even if the district court lacked diversity jurisdiction when it entered judgment and even if the case had been improperly removed from state court. The Supreme Court has expressly recognized the authority of an appellate court to cure a problem with diversity jurisdiction by dismissing on its own a nondiverse defendant that is not indispensable under Federal Rule of Civil Procedure 19. To act otherwise, it said, is to compel the parties to "jump through . . . judicial hoops merely for the sake of hypertechnical jurisdictional purity." *Newman-Green, Inc. v. Alfonso-Larrain*, 490 U.S. 826, 837 (1989). Likewise, even when a district court improperly denied a motion challenging the removal of the case from state court, the Supreme Court has instructed appellate courts to uphold a proper judgment by the district court, explaining, "Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 75 (1996). In

3

neither *Newman-Green* nor *Caterpillar* did the Court suggest that the appellate court should remand the issue for the district court to exercise its discretion when the facts are clear. In some cases, as here, there is no reason to think that the district court is better positioned to make the call than we are.

## II. THE CONTROLLING LAW

The issue before the court is straightforward. But to understand the positions of the parties, it is necessary to clear some brush and properly set the scene. Although it is now obvious that the district court lacked diversity jurisdiction when it entered judgment, that jurisdiction was not presented as an issue in the appellate briefing. Ms. Woods challenged the removal of the case from state court, but solely on the ground of an alleged "snap removal" by Ross before Ms. Woods had a full opportunity to serve Ms. Butler, whose presence as a defendant citizen of the forum state would have precluded removal. A review of some of the requirements of diversity jurisdiction and removal will show where the parties missed the boat and help anchor the discussion.

### A. Diversity of Citizenship

A federal court has diversity jurisdiction under § 1332(a)(1) only if there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Since the tenure of Chief Justice Marshall, federal courts have evaluated jurisdiction by reference to the "'state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). Under this "time-of-filing" rule, the citizenship of every plaintiff at the time the complaint is filed

4

must be diverse from the citizenship of every defendant at the time the complaint is filed; a later change in the citizenship of a party (as opposed to a change in who the parties are) can neither create nor destroy complete diversity. *See id.* at 574 ("Where there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." (emphasis, brackets, and internal quotation marks omitted)). The parties whose citizenship matters for the court's diversity evaluation are those named in the complaint, *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005), although there are limited exceptions, as when a party has been "'improperly or collusively'" named solely to create or defeat federal jurisdiction, *id.* at 91–92 (quoting 28 U.S.C. § 1359); *see* James Wm. Moore, 16 Moore's Federal Practice—Civil § 107.52[2], [3], [4], at 107–79–107–103 (3d ed. 2020) (describing named parties that can be ignored for purposes of diversity jurisdiction).[1]

Whether a defendant has been served is not relevant to whether the complete-diversity requirement is satisfied. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) (when the plaintiff is a resident of the forum state, "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant," because in such circumstances "there is no diversity of citizenship"); *United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995)

---

[1] It should be noted that even though Ms. Butler's presence as a party would ordinarily defeat diversity jurisdiction, that would not be the case if her joinder as a defendant was solely for the purpose of defeating removal. *See Lincoln Prop.*, 546 U.S. at 91–92. And that appears to be the situation here. Ms. Woods made absolutely no effort to bring Ms. Butler into the case as a defendant other than including her in the caption. I see no need to resolve the issue at this stage of the proceeding. But it could arise later on.

("[D]iversity jurisdiction must be determined from the face of the pleading and not from returns of service of process or lack thereof[.]" (original brackets and internal quotation marks omitted)); *Howell v. Tribune Ent. Co.*, 106 F.3d 215, 217–18 (7th Cir. 1997) (rejecting argument that the citizenship of a defendant could be ignored because the defendant had never been served).

The Supreme Court has, however, recognized an exception to the time-of-filing rule. Even when there is not diversity jurisdiction at the outset of the case, that defect can be cured if the nondiverse parties are dismissed before final disposition of the case on appeal or certiorari. *See Grupo Dataflux*, 541 U.S. at 572 ("[C]uring a jurisdictional defect [by dismissing the party that had destroyed diversity] ha[s] long been an exception to the time-of-filing rule."). For example, in *Caterpillar,* 519 U.S. at 64–66, 73, the jurisdictional defect in the action was cured when the intervenor-plaintiff settled all its claims against the nondiverse defendant and the court dismissed the nondiverse defendant from the action. *Cf. Grupo Dataflux*, 541 U.S. at 568, 577–80 (diversity was lacking because at time of filing the complaint two partners of plaintiff limited partnership were foreign citizens, as was the defendant; when aliens later left the partnership, the partnership no longer had a foreign citizenship but that did not cure the jurisdictional defect). A lack of diversity jurisdiction can also be cured without resolving the merits of the diversity-destroying claim when the court is able to dismiss the nondiverse party because its interests are severable and the dismissal would not create unfairness (in other words, if the dismissed party is not indispensable, *see* Fed. R. Civ. P. 19(b), 21). *See Grupo Dataflux*, 541 U.S. at 572–73.

6

In appropriate circumstances this dismissal can be effected by an appellate court after the district court has entered judgment. In *Newman-Green* a panel of the Seventh Circuit recognized at oral argument (just as the panel did in this case) that the district court did not have subject-matter jurisdiction when it entered judgment because there was not diversity of citizenship of the parties. *See* 490 U.S. 826, 828–29 (1989). The problem was a subtle one; one of the defendants was a citizen of the United States but was living in Brazil and not domiciled in any State. *See id.* The circuit court solved the problem by dismissing the nondiverse defendant, noting that he was not an indispensable party and his dismissal would not prejudice any party. *See id.* at 829. It then ruled largely in favor of the plaintiff-appellant. *See id.* The en banc court granted rehearing and reversed, holding that the appellate court lacked authority to dismiss the defendant and (just as the panel majority here is doing) remanded to the district court "to determine whether it would be prudent to drop [the defendant] from the litigation." *Id.* at 829–30. The Supreme Court disagreed. It held that the court of appeals had authority to dismiss a dispensable nondiverse party and that "the practicalities weigh heavily in favor of the decision made by the Court of Appeals panel to grant [the] motion to dismiss [the nondiverse party]." *Id.* at 837. It pointed out: "If the entire suit were dismissed, [the plaintiff] would simply refile in the District Court against the [diverse defendants] and submit the discovery materials already in hand. The case would then proceed to a preordained judgment." *Id.* In language that I wish the panel majority here would have heeded, the Court summed up that the plaintiff "should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity." *Id.* This

7

court has followed *Newman-Green* in published opinions on at least two occasions. *See*

*Grice v. CVR Energy, Inc.*, 921 F.3d 966, 968–70 (10th Cir. 2019); *Weber v. GE Group*

*Life Assur. Co.*, 541 F.3d 1002, 1009 n.8 (10th Cir. 2008).

### B. Removal

Turning to the subject of removal of state-court cases to federal court, the

existence of diversity jurisdiction under 28 U.S.C. § 1332(a) is not the only requirement

for removal. The removal statute, 28 U.S.C. § 1441, also imposes nonjurisdictional

limitations. *See Grupo Dataflux*, 541 U.S. at 574 (explaining the distinction between a

jurisdictional flaw and a statutory defect in removal proceedings); Charles A. Wright,

Arthur R. Miller, et al., 14C Federal Practice & Procedure—Jurisdiction and Related

Matters § 3721, at 1 (rev. 4th ed. 2018) ("The right to remove a case from a state to a

federal court is purely statutory and its scope and the terms of its availability therefore are

entirely dependent on acts of Congress." (footnotes omitted)); *id.* at 11 ("[R]emoval is

not a kind of jurisdiction. . . . Rather, it is a means of bringing cases within federal courts'

original jurisdiction into those courts."). Two statutory limitations are relevant here. One

relates to the parties, the other is temporal.

First, even when the parties have diverse citizenship, removal may be prohibited

when one of the defendants is a citizen of the forum state. *See* 28 U.S.C. § 1441(b)(2)

("A civil action otherwise removable solely on the basis of the jurisdiction under section

1332(a) of this title may not be removed if any of the parties in interest properly joined

and served as defendants is a citizen of the State in which such action is brought.") This

provision is sometimes called the "forum-defendant rule." It reflects the view that the

8

purpose of removal under diversity jurisdiction is to protect defendants who fear parochial bias in state courts, so local defendants have no legitimate need to remove cases to federal court. *See* 16 Moore's Federal Practice, *supra*, § 107.55[1], at 107–108 ("The justification for the forum defendant rule is simple. The purpose of diversity jurisdiction is to provide litigants with an unbiased forum by protecting out-of-state litigants from local prejudices. Therefore, it makes no sense to allow an in-state defendant to take advantage of removal on the basis of diversity jurisdiction.").

Second, unlike jurisdictional requirements that need only be satisfied by the time of final disposition, the removal statute must be fully satisfied at the time of removal. In particular, although a later change in the parties may cure a problem with diversity jurisdiction, there remains the statutory requirement that there must have been diversity at the time of removal. *See Caterpillar*, 519 U.S. at 73 ("The *jurisdictional* defect was cured, *i.e.*, complete diversity was established before the trial commenced. . . . But a statutory flaw—[Defendant]'s failure to meet the § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed—remained in the unerasable history of the case."); *Grupo Dataflux*, 541 U.S. at 574 ("failure to comply with the requirement of the removal statute, 28 U.S.C. § 1441(a), that there be complete diversity at the time of removal" was a "statutory defect," not a "jurisdictional defect"); *Lexecon v. Milberg Weiss*, 523 U.S. 26, 43 (1998) (characterizing the situation in *Caterpillar* as "untimely compliance" with statutory requirements of removal rather than "continuing defiance"); 14C Wright & Miller, *supra*, § 3723, at 294 ("[A] long line of authority supports the proposition that when diversity of citizenship is the basis of

removal, diversity must exist not only at the time the action was filed in the state court, but also at the time the case is removed to federal court.").

Nevertheless, just as a failure of diversity jurisdiction can be *cured* by dismissal of the nondiverse party, a failure to comply with the removal statute can be properly *ignored* in certain circumstances. If the district court enters judgment in a case that was improperly removed, the appellate court should still affirm a proper judgment. To repeat what the Supreme Court said in *Caterpillar*, 519 U.S. at 75, "Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming." Echoing the same sort of pragmatism that underlay *Newman-Green*, it explained, "To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." *Id.* at 77.

III. APPLICATION TO THIS CASE

A. Procedural Background

The source of the failure of the parties in this case to appreciate the absence of diversity jurisdiction is unclear. Ms. Woods may not have understood the complete-diversity requirement. *See* Aplt. Br. at 1 ("Woods contends that *as to Ross*, diversity jurisdiction is **probably** proper under 28 U.S.C.A. § 1332(a)(1) [the diversity-jurisdiction statute], because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. . . . However, Woods and Butler are

10

both Oklahoma citizens, making diversity jurisdiction *improper* under 28 U.S. § 1441(a)(2) [the removal statute]." (misciting § 1441(b)(2))); *id.* at 2 (stating the nonmerits "issue[] presented" as "Did the district court err by denying [Ms. Woods's] motion to remand notwithstanding the existence of a named, yet unserved, forum defendant?" (capitalization and emphasis omitted)). Also, at oral argument Ms. Woods suggested that the district court "proceeded on the [incorrect] assumption that once the 180 [sic] days passed without service on [Ms. Butler], that took her out of the lawsuit," Oral Arg. at 4:15, so she would no longer defeat diversity. As for Ross, it apparently thought that unserved parties are not considered in assessing whether there is diversity jurisdiction. *See* Aplee. Br. at 1. Regardless of the reasons, diversity jurisdiction was not an issue in the appellate briefs, which focused on the merits and the removal statute.

At oral argument this court questioned its own appellate jurisdiction on the ground that the district-court judgment did not dispose of all claims—namely, it failed to dispose of the claim against Ms. Butler. We asked whether we needed to reverse and remand for the district court to dispose of that claim before we could hear the appeal. Ms. Woods said that such a remand would be unfortunate:

> I'm suggesting we should amongst all of us, be able to figure out a way that we don't have to remand simply for the purpose of dismissing that defendant who has not been served within 180 days and then either starting over, the court brings it back just for argument on the second issue [that is, Ms. Woods's challenge to the merits of the district-court decision]. That just all does not make much sense to me, although I am sensitive to the concept that you've got to have appellate jurisdiction.

Oral Arg. at 8:49–9:24. We also mentioned that there was not diversity jurisdiction even at the time of judgment, although that could be cured by the district court's dismissing

11

Ms. Butler.  During rebuttal oral argument, Ms. Woods noted the possibility of "remand[ing] to the trial court for the limited purpose of dismissing the unserved defendant and then bring[ing] it back to the Tenth Circuit; which doesn't make too much sense."  Oral Arg. at 39:15–39:31.

At the conclusion of argument we told counsel that they could submit supplemental authority on the jurisdictional issues under Federal Rule of Appellate Procedure 28(j).  The responses, which are limited by the Rule to 350 words, were brief. Ms. Woods cited *Bristol v. Fibreboard Corp.*, 789 F.2d 846 (10th Cir. 1986) (per curiam), for the proposition that we have appellate jurisdiction so long as the district court's judgment disposes of all claims by and against the served defendants.  Ross also cited *Bristol*, and further stated that appellate courts have authority to dismiss dispensable nondiverse parties, citing *Newman-Green* and *Wyles v. Sussman*, 661 F. App'x 548, 550 n.1 (10th Cir. 2016).  It is clear that the parties believed that dismissal of Ms. Butler by the district court on remand would be a foregone conclusion and remand for that purpose should be avoided as unnecessary.

The majority opinion states that it disagrees with my claim that "Ms. Woods did not challenge the district court's diversity jurisdiction in her briefs," and proceeds to assert that she raised lack of diversity jurisdiction in her briefs on appeal.  Maj. Op. at 14. But it misreads Ms. Woods's opening brief.  To be sure, a subheading in the brief begins with the sentence:  "There is no diversity of citizenship."  Aplt. Br. at 10.  But the brief uses the term *diversity of citizenship* in an incorrect, idiosyncratic manner.  The discussion under the subheading does not refer to the statutory requirement of complete

12

diversity in 28 U.S.C. § 1332(a)(1).  Rather, it refers to the requirement of the removal

statute, 28 U.S.C. § 1441(b)(2), that removal is improper if any defendant is a citizen of

the forum state.  This is clear from the "Jurisdictional Statement" on page 1 of the brief.

The first sentence of the third paragraph, contrary to the majority opinion's statement that

Ms. Woods has consistently challenged diversity jurisdiction under § 1332, states:

"Woods contends that as to Ross, diversity jurisdiction is probably proper under 28

USCA § 1332(a)(1) . . . ."  The next paragraph begins with the sentence: "However,

Woods and Butler are both Oklahoma citizens, *making diversity jurisdiction improper*

*under 28 US[C] § 1441(a)(2).*"  (Misciting § 1441(b)(2)) (Emphasis added).  The next

page of the brief states the two issues presented in the case.  The nonmerits issue is:  "Did

the district court err by denying Plaintiff's Motion to Remand notwithstanding the

existence of a named, yet unserved, forum defendant?"  That issue clearly relates to

§ 1441, not § 1332.  And if there were any doubt about the intent of Ms. Woods, one

need only listen to the oral argument.  Her attorney stated that there were two issues in

the case, and diversity jurisdiction under § 1332 was not one of them.  When a member

of the panel asked about diversity jurisdiction (and nothing in the record indicates that

any other participant at the oral argument had recognized the issue), counsel appeared

surprised.

### B.     The Proper Path Forward

In this light, I fail to see any reason for not following *Newman-Green* and curing

the jurisdictional defect by dismissing Ms. Butler.  The majority opinion objects that

"neither party . . . addressed Rule 19(b) dispensability in their briefs."  Maj. Op. at 9.  But

13

the obvious reason why that issue was not briefed was that no one had raised diversity jurisdiction as an issue on appeal until the court brought it up for the first time at oral argument. That was also the case in *Newman-Green* itself; the issue of diversity jurisdiction was first raised by a circuit judge during oral argument. *See* 490 U.S. at 828. The majority also faults Ross for failing to address in its Rule 28(j) letter "how the Rule 19(b) dispensability factors apply to this case." Maj. Op. at 9 n.3. But this is unfair to Ross and hardly an excuse for us not to do our duty. At oral argument the panel requested counsel for both parties to submit Rule 28(j) letters addressing jurisdiction. Such a letter is not supposed to be a brief. Its purpose is to provide "pertinent and significant authorities" to the court. Fed. R. App. P. 28(j). There is certainly no need for such a letter, or any submission to the court, to belabor the obvious. I cannot think of anyone who is more obviously *not* an indispensable party than one who has not been served and has been treated as a nonparty by the parties and the judge throughout the district-court proceedings. This court's ability to resolve the issue has hardly been hampered by the absence of a discussion of the applicability of the dispensability factors in Ross's letter.

In addition, both parties, recognizing the obviousness of the issue, have made known their common view that remanding to the district court to decide whether or not to dismiss Ms. Butler would be a waste of time and resources. The panel majority obscures this point by noting that Ms. Woods has consistently wanted the case ultimately to be remanded to state court. But she has sought that relief on the grounds that Ross was not entitled to summary judgment and improperly removed the case from state court, not

14

because she thinks anything would be gained by a remand to the federal district court to determine whether Ms. Butler should be dismissed—which she considers an unnecessary exercise with a foregone conclusion, delaying any ultimate success she could obtain in federal court. In arguing for a remand to state court she had always assumed that Ms. Butler was not a party to the case when judgment was entered; and at oral argument—when we pointed out the error of her assumption—she expressed a desire that we could cure that error without wasting time with a remand to the district court to decide whether to dismiss Ms. Butler, so that the merits of her appeal (a challenge to both removal and the propriety of summary judgment) could proceed apace.

The panel majority repeatedly quotes *Newman-Green* for the proposition that appellate-court authority to dismiss a dispensable nondiverse party "should be exercised sparingly." 490 U.S. at 837. But it ignores the Supreme Court's explanation of that language and its ruling in that very case. The use of the word *sparingly* is not an invitation to arbitrarily refuse to dismiss a party. The Supreme Court was not setting some crude quota, limiting the number of dismissals of nondiverse parties. Rather, it was introducing the analysis that the appellate courts should apply in determining whether to exercise the power to dismiss a party. Immediately after the "sparingly" language, the Court explained what it meant:

> In each case, the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation. It may be that the presence of the nondiverse party produced a tactical advantage for one party or another. If factual disputes arise, it might be appropriate to remand the case to the district court, which would be in a better position to make the prejudice determination.

15

*Id.* at 837–38. This passage implies that absent any factual disputes or possibility of prejudice, the appellate court should not require a wasteful remand to dismiss the nondiverse party. In keeping with this reasoning, *Newman-Green* analyzed the circumstances, noted no factual disputes, and saw no possibility of prejudice. *See id.* at 838. The Court reversed the en banc Seventh Circuit's refusal to dismiss the nondiverse party, explaining, in language that clearly applies equally to the case before us: "Nothing but a waste of time and resources would be engendered by remanding to the District Court or by forcing these parties to begin anew." *Id.*

There will certainly be cases, perhaps the great majority of those cases in which the possibility of dismissing a nondiverse party arises, when factual issues or the complexity of the litigation counsels that the district court should be the one to determine whether dismissal is appropriate. This is not such a case. It is inconceivable that either party in this case could be prejudiced by our dismissal of Ms. Butler. She did not participate as a party in any way during the district-court proceedings. Her sole participation was as a deposed witness. Nor can I conjure up any reason why she would be indispensable.

The panel majority describes the *Newman-Green* decision as merely "allow[ing] a court of appeals to consider whether it should dismiss a nondiverse and possibly dispensable defendant to cure a jurisdictional defect" and "did not mandate this course." Maj. Op. at 10. But surely it mandated dismissal by the circuit court in the very case before it. It said that remanding to the district court to decide whether to dismiss the nondiverse party would engender "[n]othing but a waste of time and resources." 490

16

U.S. at 838. It is hard for me to imagine what stronger language the Court could have used to tell the circuit court what to do. Although *Newman-Green* does not always require the appellate court to dismiss a nondiverse party, it also does not countenance refusing to do so when it is clear that the nondiverse party is dispensable and dismissal would not prejudice any party. To refuse to do so would be an abuse of discretion.[2]

Lower courts, despite noting the "sparingly" language, have regularly proceeded to dismiss nondiverse parties when there was no reason to think that any prejudice would follow. *See, e.g.*, *Grice*, 921 F.3d at 968–70 (10th Cir.) (acknowledging Supreme Court's "sparingly" language, but dismissing nondiverse party to restore complete diversity, where no party had identified a factual dispute or argued that the remaining parties would suffer unfair prejudice); *Trans Energy, Inc. v. EQT Production Co.*, 743 F.3d 895, 901–02 (4th Cir. 2014) (Rule 21 authority should be exercised sparingly, but it was appropriate to dismiss the nondiverse party on appeal because the nondiverse party was not indispensable and there would be no prejudice); *Molinos Valle del Cibao, C.A. v. Lama*, 633 F.3d 1330, 1343 (11th Cir. 2001) (recognizing that appellate courts are to use

---

[2] The majority opinion also says that *Grupo Dataflux* "cautioned against applying the *Caterpillar* statement [that "[o]nce a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming," 519 U.S. at 75] when a jurisdictional defect persists through judgment." Maj. Op. at 12. But once again the majority opinion misses the point of a Supreme Court opinion. *Grupo Dataflux* repeatedly recognizes the rule of *Newman-Green* that a jurisdictional defect that persists through judgment can be cured on appeal by dismissing a nondiverse party. *See* 541 U.S. at 573. What *Grupo Dataflux* refused to do was to extend *Newman-Green* (or *Caterpillar*) to permit a jurisdictional flaw to be cured by recognizing a change in the citizenship of a party (as opposed to dismissing a nondiverse party, as in *Caterpillar*, *Newman-Green*, and, I would have hoped, this case). Nothing in *Grupo Dataflux* supports the majority opinion or undercuts this dissent's application of *Newman-Green*.

Rule 21 "sparingly" but dismissing the nondiverse defendant because of "another command from the Supreme Court: 'Once a diversity case has been tried in federal court, *considerations of finality, efficiency, and economy become overwhelming*.'" (quoting *Caterpillar*, 519 U.S. at 75) (ellipsis omitted)); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675–78 (1st Cir. 1994) (acknowledging that appellate court should exercise its Rule 21 authority sparingly, but holding that dismissal was appropriate because the nondiverse defendants were not indispensable; remanding to district court to determine whether dismissal should be with prejudice); *Turtur v. Rothschild Registry Int'l., Inc.*, 26 F.3d 304, 308 (2d Cir. 1994) (acknowledging that power to dismiss dispensable party should be exercised sparingly, but nevertheless dismissing nondiverse dispensable party); *Sweeney v. Westvaco Co.*, 926 F.2d 29, 41–42 (1st Cir. 1991) (Breyer, C.J.) (court's Rule 21 authority was to be exercised sparingly, but it was appropriate to dismiss a nondiverse party because the party was not indispensable and no prejudice would result).

The circumstances here are at least as compelling as in similar cases where appellate courts had little hesitation in deciding to dismiss the nondiverse defendant. *See, e.g.*, *Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 21–23 (1st Cir. 2005) (After the plaintiff's suit against the airline was removed to federal court, the plaintiff added a skycap as a defendant, but no one noticed that this addition destroyed diversity. On appeal from a summary judgment against the plaintiff, the appellate court cured the jurisdictional defect by dismissing the skycap with prejudice.); *Sweeney*, 926 F.2d at 34, 41–42 (In a tort lawsuit, the plaintiff obtained a jury verdict against the defendant

18

company and three supervisory employees, one of whom destroyed diversity; the appellate court dismissed the nondiverse defendant and affirmed judgment against the others.); *Turtur*, 26 F.3d at 308 ("[D]ismissal of the nondiverse dispensable party" was "particularly appropriate" because the plaintiffs "failed for almost five years to prosecute their claim against the nonappearing, non-diverse party, and it will spare the parties and the courts the necessity of relitigation." (internal quotation marks omitted)); *see also Grice*, 921 F.3d at 968–70 (10th Cir.); *Weber*, 541 F.3d at 1009 n.8 (10th Cir.) (formally dismissing nondiverse parties who had been dismissed "for all intents and purposes" in district court).

Footnote 4 of the majority opinion suggests that this court may not be conserving judicial resources if we cure the jurisdictional defect by dismissing Ms. Butler. It points out that we may ultimately have to remand the case to state court anyway. That is because *Caterpillar* allows us to overlook the defect in removal only if we determine that the district court was correct on the merits. If we decide instead that the district court erred, we must remand to that court with instructions to remand the case to state court. In that event we would have expended time and effort addressing a state-law issue that should have been presented in the state court to begin with.

I am not persuaded. The fatal flaw in this argument is that it contradicts Supreme Court and Tenth Circuit precedent. The potential inefficiency suggested by the majority opinion is present in every case in which *Caterpillar* would govern. Before an appellate court can apply *Caterpillar* and disregard an improper removal, it must first determine that the district court's judgment was correct on the merits. Thus, it must conduct an

19

analysis that, in the end, may lead to the conclusion that the district court erred, requiring remand to state court. There is always the possibility that the appellate court's efforts will be "inefficient," because ultimately the state court will have to re-examine the entire case. But if this possibility of an occasional inefficiency tells us not to apply *Caterpillar* and examine the merits of the district-court judgment, then the rule of *Caterpillar* would be eviscerated. I do not believe that Justice Ginsburg and her colleagues overlooked this possibility when she wrote for the Court that "[t]o wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." *Caterpillar*, 519 U.S. at 77. The appellate court has a duty to try to uphold the judgment and avoid the overwhelming inefficiency of a redo in state court. It should not decline to determine whether the district-court judgment can be saved simply on the chance that the district court committed reversible error on the merits, requiring remand to the state court. *Caterpillar* implicitly held that any efficiency lost in those cases, or any purported offense to federalism from an "advisory opinion" where remand results, is far offset by eliminating unnecessary redos. Moreover, even if remand to the state court is necessary, the appellate court's efforts need not go for naught. The state court to which the case is remanded is free, of course, to reject the federal appellate court's reasoning (it may conclude that the rulings by the federal district court were actually correct) but I would think that it would generally benefit from being advised of that reasoning. The appellate

court's analysis may increase the efficiency of the state court's consideration of the case (although, in that particular case, the *Caterpillar* doctrine does create inefficiency).

This court pursued the proper path in *Huffman v. Saul Holdings Limited Partnership*, 194 F.3d 1072 (10th Cir. 1999). The federal district court had resolved all the claims and counterclaims through summary judgment. *See id.* at 1074. On appeal we held that the case had been improperly removed from state court because the notice of removal was untimely. *See id.* We then recognized, however, that this holding did not end the matter. First, following *Caterpillar*, we held that "a defect in removal procedure does not warrant a remand to state court if subject matter jurisdiction existed at the time the district court entered judgment. The same considerations apply whether judgment is based on the outcome of a trial or a district court's ruling on a dispositive motion." *Id.* at 1080. On the other hand, "the rationale of efficiency, economy and the interest in finality does not apply [to justify disregarding the improper removal] where the judgment reached by the trial court must be reversed on the merits and the case remanded to the trial court for further proceedings." *Id.* (ellipsis and internal quotation marks omitted). We concluded: "We must therefore turn to the merits of the case to determine whether the premise of *Caterpillar* rules out a remand to state court." *Id.* We proceeded to review each claim and counterclaim on which summary judgment had been granted and held that the district court had erred on all of them. *See id.* at 1080–84. As a result, we had to reverse and remand the district-court judgment with instructions to remand the action back to state court. *See id.* at 1084.

*Huffman* is compelling precedent that we should strive to preserve district-court judgments even though ultimately we may fail (so that our efforts have gone for naught). We did not hesitate to consider, and opine on, the merits of the district court's summary-judgment rulings just because our efforts might not result in affirming the judgment below and the case would need to be litigated in state court. On the contrary, we said that "[w]e *must* therefore turn to the merits of the case to determine whether the premise of *Caterpillar* rules out a remand to state court." *Id.* at 1080 (emphasis added). The policy reasons given by the majority opinion for remanding to district court in this case would have required us to decide *Huffman* differently. They would have persuaded us not to examine the merits of the district-court judgment in *Huffman* because of the possibility (which actually occurred in that case) that we would decide that the district-court judgment was incorrect and would therefore "produc[e] something akin to an advisory opinion" and because "federalism . . . concerns caution against advising the state court of how summary judgment should be decided." Maj. Op. at 9-10 n.4. We proceeded nonetheless to issue such an "advisory opinion" and order a remand to state court. In other words, we complied with *Caterpillar*.

I acknowledge that the case before us has one feature not present in *Caterpillar* or *Huffman*—namely, the district court here lacked jurisdiction at the time it entered judgment. But so what? That defect can, and should, be readily cured by applying *Newman-Green*, which, as discussed above, was motivated by much the same interests in efficiency as the decision in *Caterpillar*. We need only dismiss Ms. Butler from the case. This is particularly appropriate since the district court and the parties had all believed that

22

she was no longer in the case when judgment was entered. I fail to see any way in which dismissing her would create an inefficiency. After all, effecting the dismissal does not require us to analyze the merits of the district court's judgment. The efficiency concerns expressed by the majority opinion in its footnote 4 have no application to a *Newman-Green* dismissal of a party; they come into play only during the *Caterpillar* component of the analysis, which does require us to evaluate the merits. Those concerns were obvious to the panel in *Huffman*, which said that we nevertheless "must . . . turn to the merits of the case." 194 F.3d at 1080.

The majority opinion suggests that regardless of any policy reasons, *Caterpillar* does not apply in this case (at least not unless the district court decides to dismiss Ms. Butler to create diversity jurisdiction) because the Supreme Court created a bright line rule that *Caterpillar* applies only when diversity jurisdiction existed at the time the district court entered judgment.[3] It argues that the Supreme Court drew that line in *Caterpillar* when it distinguished its earlier decision in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951). *See* Maj. Op. at 7 n.2. But neither *Finn* nor *Caterpillar* addressed whether a nondiverse party could be dismissed on appeal. The reason *Caterpillar* addressed *Finn* was because Caterpillar, the party, relied on language in *Finn* in arguing that its favorable district-court judgment should be preserved. *See* 519 U.S. at

---

[3] It is interesting to note that the district-court "judgment" was not a final judgment, because it did not dispose of all the claims involving the parties. Ms. Butler was still a party and had not been dismissed. Nevertheless, for purposes of exercising our *appellate* jurisdiction, circuit precedent requires us to treat unserved defendants like her as having been dismissed. *See Bristol*, 789 F.2d at 847. It seems to me rather inconsistent, if not bizarre, that we then proceed to treat Ms. Butler as not having been dismissed as a party for the purpose of determining the *district court's* diversity jurisdiction.

23

70. The *Caterpillar* opinion discussed *Finn* to show that the cited language in the earlier opinion, although helpful to Caterpillar, had not resolved the issue now before the Court because *Finn* had addressed only estoppel of a removing defendant to later challenge a removal. *See id.* at 70–72. More importantly, absent from the majority opinion is any rationale for why *Caterpillar* would draw a rigid line that would exclude curing a jurisdictional defect under *Newman-Green*.

Along the same lines, the majority opinion baldly states that *Caterpillar* itself "distinguished between jurisdictional defects that persist through judgment and those that do not." Maj. Op. at 11. But I find nary a word in the Supreme Court opinion explaining why it would be improper to apply the rule in *Caterpillar* when the appellate court must also dismiss a nondiverse, dispensable party to establish district-court jurisdiction. And it would have been remarkable for the *Caterpillar* court to make such a statement, since substantial support for its efficiency rationale was the analysis in *Newman-Green*, which, of course, involved precisely such a cure of a jurisdictional lapse. *See Caterpillar*, 519 U. S. at 76 ("'Requiring dismissal after years of litigation,' the Court stressed in *Newman-Green*, 'would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention.'" (quoting *Newman-Green*, 490 U.S. at 836 (brackets omitted))).

The majority opinion relies on the statement in *Caterpillar* that "[d]espite a federal trial court's threshold denial of a motion to remand, if**, at the end of the day and case**, a *jurisdictional* defect remains uncured, the judgment must be vacated." 519 U.S. at 76–77 (bold font added). But that statement is fully consistent with my view. A case does not

24

end before appellate review; and we are taught by *Newman-Green* that the day to cure a jurisdictional defect does not end until the completion of appellate review. Thus, if an appellate court can cure the jurisdictional defect, the judgment need not be vacated. In *Caterpillar* itself the jurisdictional defect had been cured in district court and the Supreme Court unremarkably stated, "In this case . . . no jurisdictional defect lingered through judgment in the District Court." *Id.* at 77. I think it quite a stretch for the majority opinion to interpret that statement of fact as declaring that jurisdictional defects can be cured in the *Caterpillar* context *only* in district court. *See* Maj. Op. at 12. One would expect at least a hint of how the Court in *Caterpillar* was distinguishing *Newman-Green*.

To say that "the district court is better left to consider [the] issue [of the dismissal of Ms. Butler,]" Maj. Op. at 9, not only provides an unfortunate precedent for arbitrary failure to take appropriate action, but it contravenes the clear wishes of both the plaintiff and defendant. Is it so hard for us to formalize what the district court and the parties had thought for many months—that Ms. Butler was no longer a party to the action?

I therefore must respectfully dissent. We should exercise our authority—indeed, our duty—to cure the jurisdictional lapse and proceed to determine whether the judgment below can be preserved under *Caterpillar*.